Amy Fettig (*pro hac vice* pending)
Margaret Winter (*pro hac vice* pending)
THE NATIONAL PRISON PROJECT
OF THE ACLU FOUNDATION, INC.
915 15th Street, N.W., Seventh Floor
Washington, D.C. 20005
Tel. (202) 393-4930; fax (202) 393-4931
afettig@npp-aclu.org
mwinter@npp-aclu.org

Lee Rowland
ACLU OF NEVADA
NV Bar No. 10209
1280 Terminal Way, Suite 46
Reno, NV 89502
Tel (775) 786-1033; fax (775) 786-0805
rowland@aclunv.org

Allen Lichtenstein
ACLU OF NEVADA
NV Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
Tel (702) 433-2666; fax (702) 433-9591
alichtensteinlaw@aol.com

Stephen F. Hanlon (*pro hac vice* pending)
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. (202) 955-3000; fax (202) 955-5564

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

DAVID RIKER, ROGER LIBBY, RICKY SECHREST TERRENCE BROTHERS, JEFFREY HOSMER, MARK WHITTINGTON on their own behalf and on behalf of those similarly situated,

    Plaintiffs,

    v.

JAMES GIBBONS, Governor of Nevada; ROSS MILLER, Secretary of State of Nevada; CATHERINE CORTEZ MASTO, Attorney General of Nevada; HOWARD SKOLNIK, Director, Nevada Department of Corrections; ROBERT BANNISTER, Medical Director, Nevada Department of Corrections; and E. K. MCDANIEL, Warden, Ely State Prison.

    Defendants.

Docket No._____

**Class Action Complaint**

1

# CLASS ACTION COMPLAINT
# FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

1. The Plaintiffs are prisoners confined in Ely State Prison (ESP), a maximum security prison in Ely, Nevada, housing 1,000 men, including death row prisoners. Plaintiffs bring this class action Complaint on their own behalf and on behalf of those similarly situated, seeking relief from deprivations of medical care at ESP. These deprivations are so extreme that they subject all the men confined there to constant significant risk of serious injury, medical harm, premature death, and the needless infliction of great physical pain and suffering.

2. Defendants' actions, detailed herein, deny basic human needs, inflict unnecessary and wanton pain and suffering, and put Plaintiffs and all those similarly situated at substantial risk of physical injury, illness, and premature death, all in violation of Plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek injunctive and declaratory relief to remedy these ongoing violation of rights for themselves as well as for a class of those similarly situated.

## JURISDICTION AND VENUE

3. This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights, privileges and immunities secured by the Constitution of the United States. The rights sought to be redressed are guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. The Court has federal question jurisdiction over this controversy under 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in the District of Nevada under 28 U.S.C. § 1391. The Plaintiffs are incarcerated there, the acts complained of occurred there, and the Defendants work there.

## PARTIES

**I.   Plaintiffs**

5. Plaintiff David Riker is a prisoner in the custody of the Nevada Department of Corrections who is currently incarcerated in Ely State Prison.

2

6. Plaintiff Roger Libby is a prisoner in the custody of the Nevada Department of Corrections who is currently incarcerated in Ely State Prison.

7. Plaintiff Ricky Sechrest is a prisoner in the custody of the Nevada Department of Corrections who is currently incarcerated in Ely State Prison.

8. Plaintiff Terrence Brothers is a prisoner in the custody of the Nevada Department of Corrections who is currently incarcerated in Ely State Prison.

9. Plaintiff Jeffrey Hosmer is a prisoner in the custody of the Nevada Department of Corrections who is currently incarcerated in Ely State Prison.

10. Plaintiff Mark Whittington is a prisoner in the custody of the Nevada Department of Corrections who is currently incarcerated in Ely State Prison.

**II. Defendants**

11. Defendant James Gibbons is the Governor of the State of Nevada. As Governor, Gibbons is the President of the Board of State Prison Commissioners (the "Board"), the state governmental body responsible for oversight of all prisons in Nevada. As part of its oversight duties, the Board receives semiannual reports from the State Health Officer on correctional facilities' compliance with the medical services standards established under Nevada statute. Defendant Gibbons is sued in his official capacity.

12. Defendant Ross Miller is the Secretary of State of Nevada. As Secretary of State, Miller is the Secretary of the Board of State Prison Commissioners, the state governmental body responsible for oversight of all prisons in Nevada. Defendant Miller is sued in his official capacity.

13. Defendant Catherine Cortez Masto is the Attorney General of the State of Nevada. As Attorney General, Cortez Masto is a member of the Board of State Prison Commissioners. Defendant Cortez Masto is sued in her official capacity.

14. Defendant Howard Skolnik is the Director of the Nevada Department of Corrections (NDOC). As Director, Skolnik is responsible for NDOC's daily functioning and administration. Under Nevada law, the Director of NDOC is also responsible for establishing standards for medical services in prisons with the approval of the Board. Defendant Skolnik is sued in his official capacity.

15. Defendant Robert Bannister, M.D. is the Medical Director for NDOC. As Medical Director, Bannister is responsible for the administration and provision of medical care services to individuals in NDOC's custody. Dr. Bannister's duties include ensuring the quality and adequacy of medical care services provided to prisoners at ESP. He is sued in his official capacity.

16. Defendant E. K. McDaniel is the Warden of ESP. As Warden, McDaniel is responsible for the daily functioning and administration of ESP, including the safe, secure and humane treatment of all prisoners incarcerated there. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

**I. Defendants Systematically Fail to Treat Prisoners' Serious Medical Needs Causing Significant Injury and Unnecessary and Wanton Infliction of Pain.**

17. ESP is a maximum security prison in Ely, Nevada designed to house over 1,000 men, including death row inmates.

18. ESP lacks the most basic elements of an adequate prison health care system, including: ready access to adequate medical care; a medical staff competent to examine prisoners and diagnose illnesses; adequate, accurate, and up-to-date medical record-keeping; an ability to treat medical problems or to refer prisoners to others who can, including reasonably speedy referrals and access to other physicians within the prison, or to physicians or facilities outside the prison; and adequate policies and procedures for responding to emergencies, including adequate facilities and staff to handle emergencies within the prison.

19. Every man incarcerated at ESP is subject to the following policies and practices which subject all of them to a significant risk of injury and unnecessary and wanton infliction of pain:

- Defendants' policy and practice of refusing to provide necessary medical care for serious medical needs, including injuries that a reasonable doctor or patient would find important and worthy of comment or treatment, medical conditions that significantly affect prisoners' daily activities, and medical conditions involving chronic or substantial pain;

- Defendants' policy and practice of failing to maintain an adequate system to provide prescription medication refills and to ensure continuity of treatment;

4

1. • Defendants' policy and practice of failing to make timely referrals for specialty care;
2. • Defendants' policy and practice of failing to keep professionally adequate, accurate and up-to-date medical records;
3. • Defendants' policy and practice of failing to monitor prisoners with chronic conditions adequately;
4. • Defendants' policy and practice of refusing to treat chronic pain; and
5. • Defendants' failure to ensure adequate coverage by a qualified physician at ESP.

20. This pervasive pattern of grossly inadequate medical care and the lack of basic elements of an adequate medical care system creates a substantial risk of serious medical harm for every prisoner incarcerated at ESP, and in fact causes actual harm to them. All prisoners at ESP are subject to the same medical system, the same practices and policies, and the same systematic denial of care.

21. The grossly inadequate medical care at ESP deprives the Plaintiffs and all prisoners at ESP of the minimal civilized measure of life's necessities.

**II. Defendants Are Aware of and Have Deliberately Failed to Take Adequate Action to End Medical Abuse at Ely State Prison.**

22. In the spring of 2006 the Legislative Commission's Subcommittee to Study Sentencing and Pardons, Parole and Probation heard testimony from a number of Nevada citizens regarding grossly inadequate medical care for seriously ill prisoners, in particular at ESP. As a result of this hearing, on October 6, 2006, the Subcommittee sent a formal request to the Governor's Office to have the Executive Branch carry out an evaluation of the adequacy of inmate access to medical care in Nevada.

23. The Governor's Office took no action on the Legislature's request.

24. The Board of State Prison Commissioners, whose membership is comprised of Defendants Gibbons, Miller and Cortez Masto, has either failed to require semiannual reporting on the provision of medical services in state correctional facilities or failed to review and take action on such reports. The Board's dereliction of duty in this matter has directly contributed to the current state of medical abuse at ESP.

25. In May 2007, the American Civil Liberties Union (ACLU) informed Defendant Skolnik

of the grave medical situation at ESP and the need for immediate intervention.

26. The ACLU retained a qualified medical expert, Dr. William K. Noel of Boise, Idaho, to review prisoner medical records at ESP. Dr. Noel reviewed the medical records of the thirty-five ESP prisoners that Defendant Skolnik made available for his review.

27. Dr. Noel prepared a report (the "Noel Report"), which was promptly provided to Defendant Skolnik and Defendant Bannister, detailing his findings in particular cases and a summary of his conclusions as to the status of the health care being provided to prisoners at Ely.

28. The Noel Report found overwhelming evidence that the grossest possible systemic medical abuses at ESP are occurring and have been occurring there for years. Dr. Noel's review of the records found that not only are prisoners at ESP in imminent danger of death or grave irreparable medical injury, but that they are being callously and wantonly subjected to needless physical agony inflicted by grossly improper medical treatment. Moreover, the medical records themselves were so poorly and unprofessionally maintained that he found the charting practices alone constitute a danger to prisoners at ESP. The Noel Report also found that at least one man has already died an unnecessary, slow and agonizing death and that in all likelihood there will be more such deaths and unnecessary suffering if immediate systemic changes are not made in the provision of health care at ESP.

29. Among the cases Dr. Noel reviewed is that of Patrick Cavanaugh, who was an insulin dependent diabetic. He lived in the ESP infirmary for at least two years before his agonizing death on April 10, 2006.

30. Mr. Cavanaugh's cause of death was complications of Diabetes Mellitus, peripheral gangrene of both lower extremities, hypertension, and congestive heart failure – all untreated. In the best of circumstances (hospitalization, quick antibiotics, and early detection) gangrene has a 30% mortality rate, but untreated, it is essentially 100% fatal. Mr. Cavanaugh received almost no treatment for his illnesses, so his slow, painful death in the ESP infirmary was virtually assured. Given the profound and unmistakable smell of putrefying flesh, there can be no question that every medical provider and correctional officer in that infirmary was acutely aware of Patrick Cavanaugh's condition.

31. Although Mr. Cavanaugh was an insulin-dependent diabetic, there is an order in his chart stopping all his medications, including his insulin three years before his death. The medical order is unsigned and there is no indication as to why this was done. Insulin was ordered sporadically thereafter but for the next three years until his death was never given.

32. There is no indication that consideration was ever given to surgically removing the gangrenous limbs. This procedure could have saved Mr. Cavanaugh's life. Instead, ESP medical staff left him to literally rot to death.

33. The records suggest that Mr. Cavanaugh "would not let" people come into his cell and that he started refusing all medications except for aspirin. Even though progress notes in his chart detail increasing paranoia and probable dementia, and even though gangrene is known to derange the mind, there was no order to force life-sustaining medications.

34. Although a signed and notarized full, non-limited Power of Attorney Authorization giving power to a guardian is present in his chart, there is no indication that Defendant McDaniel or any other prison official ever contacted Mr. Cavanaugh's guardian to advise her of Mr. Cavanaugh's medical condition and the need to administer medications without his consent because of his incapacity, due to his dementia, to make medical decisions for himself.

35. Even during his last days before death, where an order is given for 5 mgs of morphine sulfate every 4 to 5 hours to alleviate his terrible pain and suffering, there is no evidence that this order was ever carried out. Patrick Cavanaugh was left to die in prolonged agony and to suffer an extremely painful death without any palliative care.

36. The Noel Report also analyzed the case of Greg Leonard, who suffers from HIV, diabetes mellitus, hypertension, two spinal injuries and a botched back surgery resulting in chronic, debilitating pain, and kidney disease. Although Mr. Leonard suffers severe and chronic pain, he receives almost no treatment for that pain. He is also an insulin-dependent diabetic who needs daily sugar tests, but he has not received regular sugar checks since 2003. Moreover, when ESP medical placed Mr. Leonard on insulin on April 2, 2003, he was left on metformin (oral agent to lower blood sugar) even though the metformin can cause ketoacidosis in insulin-dependent diabetics.

37. Like most ESP medical records, much of Mr. Leonard's chart is illegible. Vital signs are rarely taken or recorded. Like many ESP prisoners, Mr. Leonard also experienced major problems with his multiple medications at ESP. He only received his HIV medications sporadically which undermines their efficacy and puts him at great risk for resistance to entire classes of HIV medications, thereby dangerously limiting treatment options. In addition, although Mr. Leonard's health requires tight control of his blood pressure, his prescriptions are rarely refilled in a timely manner and he consistently runs out of his medications despite his vigilant efforts to obtain refills without a lapse.

38. The Noel Report noted that it is astonishing that Mr. Leonard is still alive, given the grossly inadequate medical treatment revealed in his records.

39. The Noel Report further examined the case of John Snow, an ESP prisoner who has severe degenerative hip disease and requires surgery. An orthopedist recommended hip surgery for Mr. Snow years ago but this procedure was denied as "not life-threatening." If he is not given surgery, Mr. Snow's bones will eventually wear through his acetabulae, which are the large sockets at the base of the hip bones into which the head of the femur fits. Because of Mr. Snow's condition, he is in constant, excruciating pain but he is given no pain medications. There is no medically justifiable reason for leaving this man in agony.

40. The Noel Report reviewed the case of Michael Mulder, who suffered a stroke in prison. He now suffers paralysis of his right side. His medical records indicate that Mr. Mulder had the stroke on March 15, 2001 but he was not transferred to the infirmary in ESP until March 31, 2001. There is no indication in the medical records that he received any acute treatment for his stroke.

41. Dr. Noel further reviewed Michael Mulder's case with Defendant Bannister and met with the patient during his visit to ESP. Mr. Mulder was obviously severely disabled by his stroke and he has been given absolutely no physical therapy to repair that damage. His right side is extremely impaired and he has difficulty walking and talking. His right arm, hand and fingers are also hideously contorted in an agonizing position that will only grow worse without treatment. The medical term for this disabling process is contracture. A simple brace could have prevented the contracture that has already occurred. Without intervention Mr. Mulder's arm may contract until it

1. rips itself from its own socket and his hand could bend in upon itself until the wrist breaks.

42. Another case reviewed in the Noel Report is that of Robert Ybarra. Mr. Ybarra suffers from deep vein thrombosis (DVT) and chronic, non-healing venous stasis ulcers on both lower legs and ankles. DVT is extremely painful and Ybarra suffers severe and chronic pain that is not treated. Mr. Ybarra's chronic leg ulcers could be easily cured, but instead, Defendants have allowed his open, draining, painful wounds to remain untreated for years. Without adequate treatment, he will lose his feet and legs.

43. Dr. Noel emphasized in his report that the ESP records "show a system that is so broken and dysfunctional that, in my opinion, every one of the prisoners at Ely State Prison who has serious medical needs, or who may develop serious medical needs, is at enormous risk."

44. On October 8-9, 2007, Dr. Noel met with the Medical Director of the Nevada Department of Corrections, Defendant Dr. Robert Bannister. Dr. Noel discussed his findings with Defendant Bannister who agreed to implement most of Dr. Noel's treatment recommendations for the especially urgent cases, and further stated that he was planning follow-up care for several of those prisoners.

45. Defendant Bannister unreasonably failed to implement most of these urgent treatment recommendations, despite the obvious risks to the prisoners concerned. Defendant Skolnik was also made aware of these urgent treatment needs but failed to require meaningful corrective action.

46. The gross medical abuse at ESP is further exacerbated because Defendant McDaniel, the Warden at ESP, arbitrarily denies, delays and intentionally interferes with the medical decisions of ESP medical staff.

47. On December 6, 2007, Defendants Gibbons, Miller, Cortez Masto and Skolnik received copies of the Noel Report.

48. In response to the findings of the Noel Report, Defendants sent some of the seriously ill prisoners at ESP to High Desert Correctional Center ("High Desert") and allegedly hired a part-time local doctor to work at ESP.

49. Recent reports from prisoners transferred to High Desert indicate that the prisoners are still not receiving adequate medical care at that facility.

50. Recent reports from prisoners remaining at ESP reveal that grossly inadequate medical

1 care continues unabated at ESP and many medically fragile prisoners remain at the facility without access to necessary medical services.

51. All Defendants are aware of the systemic deficiencies in the provision of medical services at ESP, have disregarded the excessive risks to prisoner health and safety caused by those deficiencies, and have deliberately failed to take reasonable and timely steps to prevent the likely risk of harm caused by those deficient medical services.

**IV.     Exhaustion of Administrative Remedies.**

52. Plaintiffs have exhausted such administrative remedies as are available to them.

## CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

54. Plaintiffs seek to represent a class consisting of "all prisoners who are now or will in the future be confined in Ely State Prison in Ely, Nevada" (hereinafter the "ESP Class"). As a result of their confinement at ESP, the Plaintiffs and the ESP Class have been, are, and will be subjected to violations of their constitutional rights as described in this Complaint. Plaintiffs represent a class of persons seeking declaratory and injunctive relief to eliminate or remedy Defendants' policies, practices, acts, and omissions depriving them of those rights.

**The Named Plaintiffs**

55. **Plaintiff David Riker** suffers from rheumatoid arthritis (RA) and fibromyalgia. These conditions cause debilitating and chronic pain. The California Department of Corrections, which had custody of Mr. Riker before his incarceration by NDOC, extensively documented his medical conditions including the treatment regimens which had proved effective to control his symptoms. Those treatment regimens were stopped when he came to ESP in 2005.

56. When a doctor at NDOC's Regional Medical Facility (RMF) reviewed Rikers' records and conditions in August of 2006 and prescribed appropriate medications and ordered x-rays, ESP medical staff did not follow her orders. Mr. Riker never received x-rays, and the medical staff at ESP did not implement the order for a dosage increase in his medication. Instead, the Physician's Assistant at ESP, Max Carter, took him off the medications ordered by the RMF doctor and stated

that Riker does not have rheumatoid arthritis, a condition previously treated and diagnosed by several Rheumatologists.

57. Because Mr. Riker is not receiving adequate care for his RA, he suffers chronic and severe protopathic nerve pain. ESP medical staff have told him that treating chronic pain is against the policy of the prison. Such a policy or practice contradicts medical ethics and community standards of care in the State of Nevada. Medical staff do not provide him with pain medication other than very limited quantities of ibuprofen, which is completely inadequate for treating his chronic pain.

58. Mr. Riker takes or has taken several medications that require careful monitoring for possible side effects and complications, including Plaquinel and Methotrexate, but ESP medical staff fail to perform the regular testing required to ensure that Mr. Riker is not harmed by his medications.

59. Mr. Riker's medical records also demonstrate that he is prescribed medication that is alternately stopped for no reason or the refills are not given on time so he is frequently forced to go without them. For example, he has been prescribed Propanolol for both migraines and blood pressure control and this medication is often discontinued suddenly. Propanolol is a beta blocker and if stopped abruptly can cause a heart attack.

60. Mr. Riker is not receiving adequate treatment for his serious medical conditions at ESP and he is at great risk of suffering and has suffered serious medical harm.

61. **Plaintiff Roger Libby** has a right inguinal hernia. Mr. Libby suffers a great deal of pain and discomfort due to his hernia. The hernia is causing him problems with digestion and difficulty with bowel movements. Over time his condition has gotten worse and the hernia is now the size of a softball. The proper treatment for this condition is surgery if the patient can tolerate it.

62. Mr. Libby repeatedly requested surgery for his hernia, but Defendants have denied this medically necessary treatment. His medical records show no medical reason why Mr. Libby should not have a hernia operation.

63. The only treatment Defendants have provided for the hernia is a truss, which is not good medical practice. It weakens the inguinal ring and musculature and over time makes the hernia worse.

64. Mr. Libby is not receiving adequate treatment for his serious medical condition at ESP and he is at great risk of suffering and has suffered serious medical harm.

65. **Plaintiff Rickey Sechrest** has chronic intermittent Herpetic Iritis of his right eye which has not been treated properly. If this disease is not treated promptly it leads to scarring and blindness. Mr. Sechrest is at great risk of going blind due to the grossly inadequate medical care provided by Defendants.

66. Mr. Sechrest's liver enzymes were elevated for years, but Defendants did no testing for Hepatitis C (HCV) until 2005. Although he tested positive for HCV, Defendants have never offered him treatment for the disease. Indeed, there is no indication in his medical records that he has ever been evaluated under a treatment protocol to determine whether or not he is a good candidate for HCV treatment. Instead, he appears to be denied care for a potentially lethal disease without any medical consideration. He is also frequently placed on steroids, which is contraindicated for patients with HCV.

67. Mr. Sechrest's medical file has no record of his age, the progress notes are extremely scanty, and there is almost no mental health record. His medical chart is very incomplete for a man with significant health problems.

68. Mr. Sechrest has experienced difficulties obtaining medications at ESP. In at least one instance, ESP medical staff deliberately denied Mr. Sechrest his medications after he signed for their receipt.

69. Mr. Sechrest is not receiving adequate treatment for his serious medical conditions at ESP and he is at great risk of suffering and has suffered serious medical harm.

70. **Plaintiff Terrence Brothers** suffered from untreated open sores on his scalp for approximately ten years at ESP. After years of requesting treatment without success, Mr. Brothers

finally received a prescription shampoo that helped his condition in 2006. But due to the years of inadequate treatment, his scalp is permanently scarred, discolored and a large keloid formed on the back of his head. This keloid often swells, bleeds and is very painful. Despite repeated requests, Defendants still refuse to treat this condition.

71. Mr. Brothers is not receiving adequate treatment for his serious medical condition at ESP and he is at great risk of suffering and has suffered serious medical harm.

72. **Plaintiff Jeffrey Hosmer** suffers from chronic severe back and neck pain and numbness on his left side. Despite repeated requests for care, Mr. Hosmer's condition is not being adequately treated. He frequently waits weeks or months to be seen by a doctor even though he is housed in ESP's infirmary.

73. Mr. Hosmer's pain medication refills are often delayed for days or weeks at a time causing him to suffer excruciating pain.

74. Mr. Hosmer is bi-polar and his medications for that condition are frequently interrupted or discontinued thereby worsening his condition.

75. Mr. Hosmer is not receiving adequate treatment for his serious medical conditions at ESP and he is at great risk of suffering and has suffered serious medical harm.

76. **Plaintiff Mark Whittington** requires thyroid replacement therapy and he has suffered from chest and stomach pain and insomnia for months without adequate treatment despite repeated requests for care.

77. While incarcerated at ESP, Mr. Whittington has experienced continual problems with discontinued medications, dosages of prescribed medications running out, and on at least one occasion he was given the wrong medication by medical staff and suffered serious physical and

mental side effects as a result.

78. Mr. Whittington is not receiving adequate treatment for his serious medical conditions at ESP and he is at great risk of suffering and has suffered serious medical harm.

79. The requirements of Rule 23(a) are met with regard to the putative class. Specifically:

   a. There are currently over 1000 prisoners confined in ESP. The members of the class are too numerous, and the membership of the class too fluid, to permit joinder of all members.

   b. Common questions of law and fact exist as to all class members. These common questions include, but are not limited to, whether the systemically inadequate medical care provided to ESP prisoners violates their rights under the Eighth and Fourteenth Amendments to the United States Constitution.

   c. The claims of the named plaintiffs are typical of those of the ESP Class as a whole. They do not have access to minimally adequate medical care at ESP and are subject to such grossly callous denial of basic medical care that every class member is either suffering from, or at great risk of suffering, agonizing pain, injury and potentially premature death.

   d. Plaintiffs will fairly and adequately represent the interests of the class. The interests of the Plaintiffs are consistent with those of the class, and they are represented by counsel who are experienced in class action, civil rights, and prison conditions litigation.

80. The further requirements of Rule 23(b)(2) are met in this case in that at all times Defendants have acted and refused to act on grounds generally applicable to the class, thereby

making appropriate final injunctive and declaratory relief with respect to the class as a whole.

**CLAIM FOR RELIEF**

**Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983**

81. Defendants' policies, practices, acts, and omissions place Plaintiffs and the ESP class at unreasonable, continuing and foreseeable risk of serious medical problems.

82. Defendants have acted with deliberate indifference to Plaintiffs' and the ESP class's serious medical needs by implementing, sanctioning, approving, ratifying, or failing to remedy policies, practices, acts and omissions that deny, delay or intentionally interfere with medical treatment.

83. Defendants' deliberate indifference to Plaintiffs' and the ESP class's serious medical needs puts Plaintiffs and the ESP class at substantial risk of injury, causes avoidable pain, mental suffering, and deterioration of their health, and in some cases it has resulted or may result in premature death. Defendants' conduct constitutes unnecessary and wanton infliction of pain on the Plaintiffs and the ESP class.

84. Defendants' policies, practices, acts, and omissions evidence and constitute deliberate indifference to the serious medical needs of prisoners and violate the Cruel and Unusual Punishments Clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment to the Untied States Constitution.

85. As a proximate result of Defendants' unconstitutional policies, practices, acts and omissions, Plaintiffs and the ESP class have suffered and will continue to suffer immediate and irreparable injury, including physical, psychological and emotional injury and risk of death. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein. The injunctive relief sought by Plaintiffs is necessary to prevent continued and further injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Issue an order certifying this action to proceed as a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure;

2. Issue a judgment declaring that the actions of Defendants described herein are unlawful and violate Plaintiffs' rights under the Constitution and laws of the United States;

3. Enjoin Defendants, their subordinates, agents, employees, and all others acting in concert with them, from subjecting Plaintiffs to the conditions set forth in this Complaint;

4. Grant Plaintiffs their reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law; and

5. Grant such other relief as the Court considers just and proper.

Date: March 6, 2008

BY:

Amy Fettig *(pro hac vice pending)*[1]
Margaret Winter *(pro hac vice pending)*
THE NATIONAL PRISON PROJECT OF
THE ACLU FOUNDATION, INC.
915 15th Street, N.W., Seventh Floor
Washington, D.C. 20005
Tel. (202) 393-4930; fax (202) 393-4931
afettig@npp-aclu.org
mwinter@npp-aclu.org

---

[1] Attorneys Winter, Fettig and Hanlon will comply with LR IA 10-2 within 45 days.

*[signature]*

Lee Rowland
ACLU OF NEVADA
NV Bar No. 10209
1280 Terminal Way, Suite 46
Reno, NV 89502
Tel (775) 786-1033; fax (775) 786-0805
rowland@aclunv.org

Allen Lichtenstein
ACLU OF NEVADA
NV Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
Tel. (702) 433-2666; fax (702) 433-9591
alichtensteinlaw@aol.com

Stephen F. Hanlon *(pro hac vice pending)*
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. (202) 955-3000; fax (202) 955-5564