Amy Fettig
Margaret Winter
THE NATIONAL PRISON PROJECT
OF THE ACLU FOUNDATION, INC.
915 15th Street, N.W., Seventh Floor
Washington, D.C. 20005
Tel. (202) 393-4930; fax (202) 393-4931
afettig@npp-aclu.org
mwinter@npp-aclu.org

Lee Rowland
ACLU of Nevada
NV Bar No. 10209
1280 Terminal Way, Suite 46
Reno, NV 89502
Tel. (775) 786-1033; fax (775) 786-0805
rowland@aclunv.org

Allen Lichtenstein
General Counsel, ACLU of Nevada
NV Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
Tel. (702) 433-2666; fax (702) 433-9591
alichtensteinlaw@aol.com

Stephen F. Hanlon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. (202) 955-3000; fax (202) 955-5564
stephen.hanlon@hklaw.com

*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| DAVID RIKER, ROGER LIBBY, TERRENCE BROTHERS, JEFFREY HOSMER, MARK WHITTINGTON on their own behalf and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES GIBBONS, Governor of Nevada; ROSS MILLER, Secretary of State of Nevada; CATHERINE CORTEZ MASTO, Attorney General of Nevada; HOWARD SKOLNIK, Director, Nevada Department of Corrections; ROBERT BANNISTER, Medical Director, Nevada Department of Corrections; and E. K. MCDANIEL, Warden, Ely State Prison.<br><br>Defendants. | 3:08-CV-115-LRH-VPC<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND OPPOSITION TO DEFENDANTS' MOTION TO SEVER |

## INTRODUCTION

Defendants' challenges to the proposed class rest upon a faulty understanding of the four prerequisites of Fed. R. Civ. P. 23(a) and the criteria set forth in Fed. R. Civ. P. 23(b)(2). Similarly, Defendants' motion to sever under Fed. R. Civ. P. 21 must be denied as Plaintiffs clearly meet the qualifications for class certification so that joinder of plaintiffs is irrelevant to this case. If joinder were at issue, however, there would be no cause to sever the Plaintiffs' claims.

I. **PLAINTIFFS SATISFY ALL OF THE RULE 23 REQUIREMENTS.**

The Court's task on this motion is not to resolve factual disputes, decide the merits, or

2

formulate the requested injunctive relief. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Rather, the Court must make a procedural determination of whether the proposed class satisfies Rule 23, treating all substantive allegations in the Complaint as true. *See Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). Plaintiffs abundantly meet all the requirements for class certification.

### A. Plaintiffs Satisfy the Numerosity Prerequisites of Rule 23(a)(1).

Plaintiffs propose a simple, straightforward class definition: "All prisoners who are now, or in the future will be, in the custody of the Nevada Department of Corrections at Ely State Prison in Ely, Nevada." ("the ESP class"). (Am. Compl. ¶53). The ESP class includes approximately 1000 men incarcerated at Ely State Prison in Ely, Nevada ("ESP"). (*Id.* ¶16). Defendants argue that this action is "unmanageable" because not every class member has a current medical complaint and the total of those who do are nowhere close to "the millions of individuals who have played video poker or electronic slot machines." (Defs.' Resp. Br. at 5) (citing *Poulos v. Caesars World, Inc.*, 2002 WL 1991180 (D. Nev. 2002).

There is no requirement that the class number in the millions to fulfill Rule 23(a)(1)'s numerosity requirement. *See, e.g., Stolz v. United Bhd. of Carpenters and Joiners of America, Local Union No. 971*, 620 F. Supp. 396, 404 (D. Nev. 1985) (finding that a class of close to 700 members "clearly makes joinder of all parties into a single action impracticable"); 5 *Moore's Federal Practice*, §23.22[3][a] (Matthew Bender, 3d ed.) (noting that classes comprising more than 40 individuals are generally found to satisfy the impracticality of joinder requirement).

Defendants concede that the Complaint contains numerous allegations that Ely prisoners have already suffered serious harm as a result of Defendants' unconstitutional policies and practices. (Defs.' Resp. Br. at 3). Indeed, an expert report by Dr. William Noel concluded that the medical records at ESP "show a system that is so broken and dysfunctional that, in my opinion, every one

3

of the prisoners at Ely State Prison who has serious medical needs, or who may develop serious medical needs, is at enormous risk." (Am. Compl. ¶ 42). Thus, even those prisoners who do not currently have an illness are subject to a risk that a health problem will go undiagnosed by Defendants' inadequate health care system or will be mistreated after it is detected. Such a showing is sufficient for adjudication of class claims. *See Hassine v. Jeffes*, 846 F.2d 169, 178 (3rd Cir. 1988)("[T]he complainants' assertion that these conditions [of confinement] existed, and that they were *subject* to them—even if they had not at the time of assertion themselves been injured by those conditions—was sufficient to require adjudication of the claims as to the class.") (emphasis in original). Indeed, risk is sufficient to establish liability and obtain permanent injunctive relief under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 33-34 (1993). Plaintiffs' allegations are sufficient to demonstrate numerosity and the impracticality of joinder.

### B. Plaintiffs Satisfy the Commonality and Typicality Prerequisites of Rule 23(a)(2) and (3).

Defendants' challenges to commonality and typicality rest on a fundamental misunderstanding of Rule 23(a)(2) and (a)(3). In essence, Defendants appear to be arguing that because each class member may have different medical issues and the medical mistreatment they are subject to may result from different medical actions, Plaintiffs cannot satisfy the commonality and typicality prerequisites. (Defs.' Resp. Br. at 5).

Unlike the more stringent requirement of Rule 23(b)(3) that is *not applicable* to the putative class in this action, commonality under Rule 23(a)(2) does *not* require that common issues predominate over individual issues. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (commonality inquiry is less rigorous than the analysis of predominance). The threshold for demonstrating commonality is not high—it is a "permissive and minimal burden." *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1225 (9th Cir. 2007). *See also Hanlon*, 150 F.3d at 1020 (requirements of Rule 23(a)(2) are "minimal"). The typicality requirement of Rule 23(a)(3) is similarly

4

"permissive" and requires only that the representative claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes*, 474 F.3d at 1232 (quoting *Hanlon*, 150 F.3d at 1020).

Class certification cannot be defeated in this action simply because health care policies and practices are applied to each prisoner depending upon "the factual nature of the various situations" or that the "injuries allegedly suffered vary from inmate to inmate and may have resulted from different courses of conduct." (Defs.' Resp. Br. at 5). Courts have unequivocally held that commonality does *not* require a complete identity of facts or law among class members. In fact, a single common issue may be sufficient, *Dukes*, 474 F.3d at 1225, and individual factual differences among class members will not destroy typicality or commonality when plaintiffs identify a common course of conduct as the cause of injury. *See, e.g., id.* at 1232 (variance in the degree of injury among class members does not defeat typicality when class members are subject to a common course of conduct); *Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001) (commonality met by a class composed of "the hearing impaired, the vision impaired, the developmentally disabled, the learning impaired, and the mobility impaired"; typicality does not require total identity of injuries, but merely similar injuries arising from the "same, injurious course of conduct"); *Hanlon*, 150 F.3d at 1019-20 (claims of named plaintiffs need not be "substantially identical" to those of absent class members); *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (class certification appropriate despite "unique" circumstances of each named plaintiff because "plaintiffs allege that their injuries derive from a unitary course of conduct by a single system").

Commonality is satisfied by either "[t]he existence of shared legal issues with divergent factual predicates" or "a common core of salient facts coupled with disparate legal remedies within the class." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (internal citation omitted) (upholding class certification where the class was broad and diverse, encompassing 15,000

5

employees from a range of positions both salaried and hourly and employed at facilities located in 27 different states, because though diverse in their individual particulars, the large class was united by company-wide discriminatory practices). In the context of a civil rights class, the commonality requirement is met "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong*, 275 F.3d at 868 (commonality found in civil rights class action challenging prison policies). *See also Dukes*, 474 F.3d at 1231 (commonality found in gender discrimination suit based on a subjective decision-making policy); *Walters v. Reno*, 145 F.3d 1032, 1045-46 (9th Cir. 1998) (commonality found in due process challenge to a set of procedures applied nationwide by the INS).

This is precisely the scenario presented by Plaintiffs: a challenge to Defendants' policies and practices of providing grossly inadequate medical care for prisoners' serious medical needs at ESP. Even in the face of unambiguous case law, Defendants still insist that Plaintiffs fail to satisfy the commonality and typicality prerequisites of Rule 23(a) because they fail to show that the alleged conditions affect all prisoners in the same manner. Defendants' fallacious argument stems from their failure to distinguish between *evidence* in the Complaint of Defendants' unconstitutional conduct and Plaintiffs' Eighth Amendment legal claim of deficient health care. It is true that some of the allegations in the Complaint described the unique injuries of the named Plaintiffs and other prisoners and former prisoners at ESP. But Defendants' focus on the individual medical situations of these prisoners misses the point that these allegations—like all of the allegations in the Complaint—ultimately describe practices that impose a substantial risk of serious harm on both the named Plaintiffs and members of the proposed class in violation of the Constitution. "The focus for purposes of Rule 23(a)(2) . . . is on the *defendants'* conduct." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 683 (S.D. Cal. 1999) (emphasis added) (citation omitted). *Cf. Blackie*, 524 F.2d at 902 ("[C]ourts have taken the common sense approach that the class is united by a common interest in

determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions. . . .").

In *Jones 'El v. Berge*, the court certified a class of prisoners subject to alleged "inadequate medical, dental and mental health care on a systemic level." No. 00-C-421-C, 2001 WL 34379611, at *12-13 (W.D. Wis. Aug. 14, 2001) (attached as Exhibit A to the Decl. of Amy Fettig in Supp. of Pls.' Reply Mem. of P. & A. in Further Supp. of Pls.' Mot. for Class Certification) ("Fettig Decl."). In that case, as here, the plaintiffs "[gave] examples in their . . . complaint of situations in which inmates with serious medical needs, such as pain resulting from stomach cancer and from kidney stones, did not receive prompt medical attention." *Id.* Yet the court did not treat these "examples" as "causes of action," as Defendants here appear to urge. Instead, the court stated that "[f]or the purpose of determining class certification, I am considering the individual problems as examples of a systemic problem but not as a basis for any action as to the particular inmate alleging a cause of action." *Id. See also Baby Neal v. Casey*, 43 F.3d 48, 61 (3d Cir. 1994) (criticizing district court for "overly fragmenting plaintiffs' claims" and noting that "[b]ecause the complaint does not seek damages, the factual differences [among class members] are largely irrelevant"). Here, too, the court should consider the allegations of individual problems as examples of the systemic constitutional deficiencies Plaintiffs seek to remedy and not permit Defendants' unjustified parsing of the allegations to defeat certification.

C.      **Plaintiffs Satisfy the Adequacy of Representation Prerequisite of Rule 23(a)(4).**

Adequacy of representation is satisfied if (1) the named plaintiffs can vigorously prosecute the action through qualified counsel; and (2) there is no conflict or antagonism between the named plaintiffs' interests and the remainder of the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The vigorous prosecution prong typically examines the qualifications of class counsel, *see Hanlon*, 150 F.3d at 1021, something Defendants do not challenge. Instead,

Defendants launch a barrage of hypothetical attacks on the named Plaintiffs.

Defendants attempt to defeat certification by raising the specter of speculative conflicts between the named Plaintiffs and the class. First, Defendants claim that Plaintiffs are "stepping out on their own." (Defs.' Resp. Br. at 6). Defendants claim that one of the named Plaintiffs, Terrence Brothers, "independently attempted to negotiate a settlement with NDOC."[1] (Defs.' Resp. Br. at 6, n. 7). No evidence is proffered to support this allegation. Nor is any detail given to support the exact nature of the purported conflict. And counsel for the Plaintiffs has never been contacted by Defendants' attorney regarding such a matter. (Fettig Decl. ¶2). Unsupported speculation must not be allowed to conjure conflicts between the named plaintiffs and class members where none exist. *See Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 464 (N.D. Cal. 1983) ("mere speculation" as to potential conflicts will not defeat adequacy of representation). As other courts have noted in a similar context, "the interests of the plaintiff coincide with the interests of the proposed class because all the detainees share a common interest in being released promptly following a court order." *Berry v. Baca*, 226 F.R.D. 398, 405 (C.D. Cal. 2005). In the instant matter, the named Plaintiffs and all current and future prisoners share a common interest in receiving adequate health care for their serious medical needs at ESP and in the vindication of their constitutional rights.

---

[1] There are five named plaintiffs in this action but defendants have only cited a potential conflict with one. Even should the court find a conflict between the class and Mr. Brothers, this would not defeat certification because the adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative. *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 128 (3d Cir. 1987), rev'd in part on other grounds, *Reed v. United Transp. Union*, 488 U.S. 319 (1989). Here, Defendants have not argued that all five plaintiffs do not meet the adequacy standards under Rule 23(a)(4). Instead, they erroneously attempt to defeat certification by alleging a possible conflict with one named plaintiff only.

Next, Defendants make unsupported allegations that some of the named Plaintiffs have not exhausted administrative remedies. (Defs.' Resp. Br. at 6). Administrative exhaustion required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), is an affirmative defense and the burden lies with the Defendants to raise and prove failure to exhaust. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007). But here, Plaintiffs have alleged exhaustion of all available remedies by each of the named Plaintiffs in their Complaint (Am. Compl. ¶51), yet Defendants merely make an unsupported allegation of non-exhaustion by a few named Plaintiffs. (Defs.' Resp. Br. at 6, n. 9). Even if Defendants had offered evidence for their assertion, the courts have long held that non-exhaustion by a few named plaintiffs will not defeat certification where a particular statute imposes an exhaustion requirement. Rather, administrative exhaustion by a single class member suffices for the class. *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (Prison Litigation Reform Act); *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2d Cir. 1990) (ADEA); *Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 919 (7th Cir. 1976) (Title VII). Here, it is undisputed that several of the named Plaintiffs have exhausted their administrative remedies. (Defs.' Resp. Br. at 6, n. 9).

Defendants also argue that the prospect of some of the named Plaintiffs being moved to other facilities in the future makes them inadequate class representatives. (Defs.' Resp. Br. at 6). This argument is speculative and runs contrary to a vast body of law holding that where, as here, detention of certain class members may be brief in duration, class certification is essential to ensure that claims for injunctive relief can be heard by the federal courts. *See, e.g., Stewart v. Winter*, 669 F.2d 328, 333-34 (5th Cir. 1982) (where prisoners were routinely transferred or released from a facility, the prospect that the individual claims of the named plaintiffs would become moot weighed heavily in favor of class certification, since "while any individual prisoner's claim for injunctive relief is in danger of becoming moot before the court can grant relief, class certification ensures the presence of a continuing class of plaintiffs with a live dispute against prison authorities"); *Penland v. Warren*

*County Jail*, 797 F.2d 332, 334-35 (6th Cir. 1986) (reversing the district court's denial of class certification under Rule 23(b)(2) in a conditions case seeking injunctive relief; "[s]ince all the named plaintiffs in this action have been released from jail, under normal procedure we must either dismiss the action as moot or certify it as a class action").

### D. Defendants Erroneously Analyze the Proposed Class under Rule 23(b)(3) Rather than Rule 23(b)(2).

Defendants argue that certification is not appropriate here because the Plaintiffs fail to satisfy the requirements of Rule 23(b). (Defs.' Resp. Br. at 7-9). Their argument, however, erroneously seeks to superimpose the requirements of Rule 23(b)(3) onto this action, even though Plaintiffs properly seek certification under Rule 23(b)(2). (Pls.' Mot. for Class Cert. at 10-12 ). Indeed, the single case they cite to support their position analyzes the requirements for class certification under (b)(3) rather than (b)(2). *Poulos*, 2002 WL 1991180, at *2 (analyzing the requirements set forth in Rule 23(b) where plaintiffs seek certification under Rule 23(b)(3); noting the particular requirements of a (b)(3) class action). The Plaintiffs, however, do not have to satisfy the requirements of (b)(3) if they qualify for certification under another prong of Rule 23(b).[2]

A class action is proper under Rule 23(b)(2) if "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, making final injunctive relief or corresponding declaratory relief with respect to the class as a whole appropriate." 5 *Moore's Federal Practice*, § 23.40[1] (Matthew Bender, 3d ed.). Rule 23(b)(2) actions are also common where final injunctive or declaratory relief is the primary relief sought on behalf of the class. *See id.*, §§ 23.40[1], 23.43[1][a]. The proposed class meets the requirements of Rule 23(b)(2) certification because "the

---

[2] Even where a case qualifies for more than one of the three types of class actions under Rule 23(b), courts routinely prefer to certify cases under (b)(1) or (b)(2) to avoid unnecessary inconsistencies and compromises in future litigation. *See, e.g., DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995); *First Federal of Michigan v. Barrow*, 878 F.2d 912, 919 (6th Cir. 1989); *Robertson v. National Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977); *Specialty Cabinets & Fixtures v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 477 (S.D. Ga. 1991).

Defendants' unconstitutional policies, practices, acts and omissions pertaining to the provision and withholding of medical treatment are imposed uniformly on all class members." (Pls.' Mot. for Class Cert. at 12). Further, Plaintiffs seek only declaratory and injunctive relief that redounds to the benefit of the class as a whole. (*Id.*). The civil rights claims raised by the plaintiffs in this action are precisely the sorts of claims that Rule 23(b)(2) was designed to facilitate.[3]

Defendants attempt to superimpose a "predominance" test onto this action, (Defs.' Resp. Br. at 6-7), even though plaintiffs seeking certification under Rule 23(b)(2) do not have to meet the "predominance" test outlined for 23(b)(3) actions. *See Walters*, 145 F.3d at 1047 ("Although common issues must predominate for class certification under Rule 23(b)(3), no such requirement exists under 23(b)(2)."). Under 23(b)(2) it is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate. Courts have certified numerous (b)(2) class actions in the Ninth Circuit despite factual variations in the injuries and experiences of individual class members. *See, e.g., Hoptowit v. Ray*, 682 F.2d 1237, 1245, 1252-53 (9th Cir. 1982) (Rule 23(b)(2) class action in which plaintiffs obtained broad injunctive relief based upon a finding that medical services at penitentiary were constitutionally deficient); *Armstrong*, 275 F.3d at 868 (Rule 23(b)(2) class action challenging diverse, systemwide

---

[3] *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of (b)(2) class actions); *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (action to enjoin allegedly unconstitutional government conduct is "the classic type of action envisioned by the drafters of Rule 23 to be brought under subdivision (b)(2)"), *aff'd in pertinent part sub nom. Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) (Rule 23(b)(2) is "an effective weapon for an across-the-board attack against systemic abuse"); A. Conte & H. Newberg, *Newberg on Class Actions* §25.20 at 550 (4th ed. 2002) ("Most class actions in the constitutional and civil rights areas seek primarily declaratory and injunctive relief on behalf of the class and therefore readily satisfy Rule 23(b)(2) class action criteria").

policies and practices affecting the hearing impaired, the vision impaired, the developmentally disabled, the learning impaired, and the mobility impaired); *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988) (emphasizing that although "the claims of individual class members may differ factually," certification under Rule 23(b)(2) is a proper vehicle for challenging "a common policy"). *See also* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)."). Plaintiffs in the instant action may have different medical conditions, but their claims are based on Defendants' policy and practice of providing constitutionally inadequate medical care to prisoners at ESP and the unacceptable risk that policy and practice place on all prisoners at ESP, regardless of current injury. Thus, Plaintiffs' claims clearly meet the requirements of Rule 23(b)(2).

Defendants also attempt to impose in this Rule 23(b)(2) action another requirement borrowed from and limited to Rule 23(b)(3) actions: namely a finding that a class action is superior to other available methods after considering manageability issues.[4] (Defs.' Resp. Br. at 7-8). By its terms,

---

[4] Defendants also raise in passing the specter of res judicata as a factor arguing against class certification in this matter. (Defs.' Resp. Br. at 2, 9). This issue is a red herring, however. Prospective class members will not suffer harm to their individual rights should the class be certified. The general rule is that a class action suit seeking only declaratory and injunctive relief, such as the instant case, does not bar subsequent individual damage claims by class members, even if based on the same events. *Hiser v. Franklin,* 94 F.3d 1287, 1291 (9th Cir. 1996); *see also Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 873-74 (1984) (plaintiffs' Title VII damages suit against their employer was not barred by the res judicata effect of a previous Title VII class action, even though the plaintiffs had been class members and witnesses in the previous action and thus could have brought their damages claim in that case); *Fortner v. Thomas,* 983 F.2d 1024, 1030-32 (11th Cir.1993) ("It is clear that a prisoner's claim for monetary damages or other particularized relief is not barred if the class representative sought only declaratory and injunctive relief, even if the prisoner is a member of a pending class action."). In fact, "every federal court of appeals that has considered the question has held that a class action seeking only declaratory or injunctive relief does not bar subsequent individual suits for damages." *In re Jackson Lockdown/MCO Cases,* 568 F.Supp. 869, 892 (E.D. Mich.1983); *see, e.g.*, Wright, Miller, & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4455 (1981 and 1995 Supp.) (collecting cases).

Rule 23 makes manageability an issue relevant *only* in determining the propriety of certifying an action as a (b)(3), not a (b)(2) class action. *See Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir. 1977) (assessing "manageability" of the class, which is an explicit consideration in (b)(3) class actions, is irrelevant to certification under Rule 23(b)(2)). Defendants' insistence that all actions should proceed separately actually *does* present a manageability question to the court because it raises the specter of multiple trials and litigation proliferation. Plaintiffs claim that the Defendants have acted on grounds generally applicable to all members of the class and that final injunctive and declaratory relief with respect to the whole class is therefore appropriate. A multiplicity of actions based on the same constitutional claims advanced here would be the consequence of denial of class certification. "Obviating such unnecessary duplication is the very purpose for which Rule 23(b)(2) was designed." *Elliott*, 564 F.2d at 1230.

## II. DEFENDANTS' MOTION TO SEVER THIS ACTION IS BASELESS AND CONTRARY TO THE INTENT OF THE FEDERAL RULES.

Defendants claim that "[t]here has been a misjoinder of parties who have quite different claims" and append a Motion to Sever to their Opposition to Class Certification in this action. (Defs.' Resp. Br. at 8-9). But Plaintiffs clearly meet the requirements of a class action under Rule 23 so that permissive joinder of parties under Fed. R. Civ. P. 20 is not at issue. Severing each Plaintiffs' claim into a separate action as Defendants urge here is therefore wholly inappropriate.

If the well-established vehicle of class action litigation did not exist, however, the thousand plus Plaintiffs in this action would easily meet the requirements of permissive joinder under Rule 20.[5] Contrary to Defendants' claim that the Plaintiffs' claims are "quite different," there is only one

---

[5] Contrary to Defendants' assertion, (Defs.' Resp. Br. at 9), the standard for joinder is quite permissive. *See, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."); *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 558 F.2d 914,

claim in this action: that the medical care system at Ely State Prison presents a pervasive pattern of grossly inadequate medical care and that the lack of basic elements of an adequate medical care system creates a substantial risk of serious medical harm for every prisoner incarcerated at ESP, and in fact causes actual harm to them; and all prisoners at ESP, including all the named Plaintiffs, are subject to the same medical system, the same practices and policies, and the same systematic denial of care. (Am. Compl. ¶¶ 17-20).

Moreover, in contrast to Defendants' boilerplate allegations that there are no common questions in this matter, (Defs.' Resp. Br. at 9), the Complaint identifies multiple questions of both law and fact common to all named Plaintiffs and the entire class. These common questions include, but are not limited to: whether Defendants have been deliberately indifferent to the serious medical needs of class members; whether Defendants have placed class members at unreasonable risk of developing serious medical problems; whether Defendants have violated class members' rights to be free of cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution; and whether Defendants' conduct shows a pattern of officially sanctioned behavior that violates Plaintiffs' rights and establishes a credible threat of future injury. (Am. Compl. ¶¶ 17-20, 21-27, 42-50, 75-79).

Finally, Defendants claim that severing this action into multiple cases would somehow decrease expense, expedite the cases and limit jury confusion.[6] (Defs.' Resp. Br. at 9). But the opposite is true. This action seeks class-wide declaratory and injunctive relief to remedy the systemic, unconstitutional medical conditions at Ely State Prison. It is not a case requiring the minute determinations of individual medical damages; no damages are requested in this case.

---

917 (9th Cir. 1977) ("We start with the premise that Rule 20, Fed. Rules Civ. Proc., regarding permissive joinder is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits.").

[6] Plaintiffs note that there is no jury trial as of right under the Seventh Amendment of the United States Constitution where, as here, the remedy sought lies in equity. *Tull v. United States*, 481 U.S. 412, 417 (1987); *In re Marshland Dev., Inc.*, 129 B.R. 626, 628 (Bankr. N.D. Cal. 1991).

14

Instead, the focus of this action is the policies and practices that knowingly create and perpetuate unconstitutional medical care at ESP. Severing this action into a multitude of individual cases would lead to the endless re-litigation of the same essential systemic questions that Rule 20 is designed to prevent. *See California Union Ins. Co. v. American Diversified Sav. Bank*, 914 F.2d 1271, 1274 (9th Cir. 1990) (joinder necessary to avoid piecemeal litigation); *League to Save Lake Tahoe*, 558 F.2d at 917 (joinder necessary for parties to obtain complete relief in single proceeding).

## CONCLUSION

For all the reasons set forth above, the Court should certify the proposed Plaintiff class and deny Defendants' motion to sever.

Date: May 29, 2008

BY: *[signature]*

Amy Fettig
Margaret Winter
THE NATIONAL PRISON PROJECT OF
THE ACLU FOUNDATION, INC.
915 15th Street, N.W., Seventh Floor
Washington, D.C. 20005
Tel. (202) 393-4930; fax (202) 393-4931
afettig@npp-aclu.org
mwinter@npp-aclu.org

Lee Rowland
ACLU of Nevada
NV Bar No. 10209
1280 Terminal Way, Suite 46
Reno, NV 89502
Tel (775) 786-1033; fax (775) 786-0805
rowland@aclunv.org

Allen Lichtenstein
General Counsel, ACLU of Nevada
NV Bar No. 3992
3315 Russell Road, No. 222
Las Vegas, Nevada 89120
Tel. (702) 433-2666; fax (702) 433-9591
alichtensteinlaw@aol.com

Stephen F. Hanlon
HOLLAND & KNIGHT LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. (202) 955-3000; fax (202) 955-5564
stephen.hanlon@hklaw.com