UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID RIKER et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JAMES GIBBONS et al., ) <br> ) <br> Defendants. ) <br> ) | 3:08-CV-00115-LRH-RAM <br><br> ORDER |

Before the court are two motions: Plaintiffs' Motion for Class Certification (#7[1]) and Defendants' Motion to Sever (#23).

**I.     Facts**

The following facts are taken from Plaintiffs' Amended Class Action Complaint (#15):

This case is brought by four[2] plaintiffs currently incarcerated at Ely State Prison ("ESP"). They bring this action on behalf of themselves and those similarly situated. Their complaint asserts one cause of action: Defendants[3] have deprived Plaintiffs of their Eighth Amendment guarantee

---

[1]Refers to the court's docket

[2]Although the Amended Class Complaint references five named plaintiffs, Plaintiff Terrence Brothers has withdrawn as a named plaintiff in this action. (*See* Pls.' Supplemental Br. (#32) at 26 n.8.)

[3]The complaint names six defendants: James Gibbons, Governor of Nevada; Ross Miller, Secretary of State of Nevada; Catherine Cortez Masto, Attorney General of Nevada; Howard Skolnik, Director of the Nevada Department of Corrections; Robert Bannister, Medical Director of the Nevada Department of

1  against cruel and unusual punishment in violation of 42 U.S.C. § 1983.  Plaintiffs seek only
2  injunctive relief.

3        The crux of Plaintiffs' complaint is that ESP lacks a constitutionally adequate health care
4  system. They allege that a constitutionally adequate health care system would include (1) ready
5  access to adequate medical care; (2) a medical staff competent to examine prisoners and diagnose
6  illnesses; (3) adequate, accurate, and up-to-date medical record keeping; (4) an ability to treat
7  medical problems or to refer prisoners to others who can; and (5) adequate policies and procedures
8  for responding to emergencies.

9        Plaintiffs further allege that ESP prisoners are subject to the following policies and
10 practices: (1) refusal to provide necessary medical care for serious medical needs; (2) failure to
11 maintain an adequate system to provide prescription medication refills and ensure continuity of
12 treatment; (3) failure to make timely referrals for specialty care; (4) failure to monitor prisoners
13 with chronic conditions; (5) refusal to treat chronic pain; and (6) failure to ensure adequate
14 coverage by a qualified physician at ESP.

15       Plaintiffs allege that the above inadequacies and polices create a substantial risk of serious
16 medical harm to each prisoner.  They further allege that the policies and inadequacies cause the
17 prisoners actual harm.  As to the factual basis for Plaintiffs' allegations, the complaint describes
18 each named plaintiff's medical condition and the medical conditions of a few unnamed prisoner-
19 plaintiffs.  The complaint also describes the manner in which ESP personnel have failed to provide
20 these prisoners with adequate medical care.

21 **II.    Legal Standard**

22       Rule 23(a) states four threshold requirements applicable to all class actions.  Rule 23(a)
23 provides the following in full:

---

25 Corrections; and E.K. McDaniel, Warden of Ely State Prison.  These defendants are sued only in their official capacities.

(a) **Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

The Supreme Court has labeled these elements as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997). In addition to satisfying Rule 23(a)'s requirements, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Plaintiffs in this case seek certification under Rule 23(b)(2), which provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

In considering a motion to certify a class, a court should first look to the pleadings to determine whether they provide sufficient information to form a reasonable judgment on each of Rule 23's requirements. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). However, if necessary, a court may request the parties to supplement the pleadings. *Id.* Moreover, if the parties submit conflicting evidence on Rule 23's requirements, the court must conduct a "rigorous analysis" to determine if plaintiffs have met the Rule. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).

**III.    Discussion**

Plaintiffs ask this court to enter an order certifying the following class: "All prisoners who are now, or in the future will be, in the custody of the Nevada Department of Corrections at Ely State Prison in Ely, Nevada." Plaintiffs' motion will be granted.

///

**A. Numerosity**

The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable . . . ." Fed. R. Civ. P. 23(a)(1). Plaintiffs' complaint alleges that there are currently one thousand prisoners at ESP, and there will be an unknown number of future prisoners. This allegation is sufficient to meet Rule 23(a)(1). The Ninth Circuit summarized the numerosity element in *Jordan v. Los Angeles County*:

> Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable. Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible. In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder.

669 F.2d 1311, 1319 (9th Cir. 1982) (citation omitted), *vacated on other grounds*, 459 U.S. 810 (1982). While the *Jordan* court declined to rely solely on the number of ascertained class members (39, 64, and 71) in finding numerosity, the court also stated it was "inclined" to do so. *Id.*

In the present case, the number of current ESP prisoners (one thousand) alone is sufficient to fulfill the numerosity requirement. Furthermore, other factors weigh in favor of finding numerosity, including the fluidity of the prison population and the prisoners' lack of access to counsel. *See Thomas v. Baca*, 231 F.R.D. 397, 399-400 (C.D. Cal. 2005) (finding numerosity in a class of 25 to 500 jail detainees who were forced to sleep on the floor each night); *Dean v. Coughlin*, 107 F.R.D. 331, 332-33 (S.D.N.Y. 1985) (finding numerosity in a class of prisoners challenging the constitutionality of their dental care on the basis that "[t]he fluid composition of a prison population is particularly well-suited for class status, because, although the identity of the individuals involved may change, the nature of the wrong and the basic parameters of the group affected remain constant").

///

**B. Commonality**

The second requirement of Rule 23(a) is that "there are questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). The Ninth Circuit has described this element as follows:

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

In this case, there are common issues of both fact and law. The common issue of fact concerns the policies and inadequacies Plaintiffs allege inhere in ESP's health care system. The common issue of law concerns whether these policies and inadequacies constitute a Eighth Amendment violation.[4] *Cf. Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (concluding that the medical services provided at a prison were so deficient that they reflected a deliberate indifference to the serious medical needs of the prisoners and therefore constituted an Eighth Amendment violation). Plaintiffs have therefore met the commonality requirement. *See also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) ("We have previously held, in a civil-rights suit, that commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members. In such circumstance, individual factual differences

---

[4] Defendants' chief argument in opposition to class certification is that "[e]ach proposed class member would present different situations involving different questions of law and fact." (Opp'n to Mot. for Class Certification & Mot. to Sever (#23) at 2:7-8, 5:11-21.) A very similar argument was examined and rejected by the United States District Court for the Southern District of New York in *Dean v. Coughlin*, 107 F.R.D. 331, 333 (S.D.N.Y. 1985) ("[D]eliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. This indifference may occur on an individual level, such as when a doctor intentionally mistreats an inmate . . . or on an institutional level, when the prison's system of medical care is so seriously inadequate as to cause unwarranted suffering. Where a prisoner class seeks to challenge an entire health care system, deliberate indifference to their health needs can be shown either by repeated acts which disclose a pattern of conduct by the prison medical staff, or by evidence of such systemic deficiencies in staffing, facilities, or procedures that unnecessary suffering is inevitable. Accordingly, the claims of each class member need not be identical to raise common factual and legal questions regarding the adequacy of an entire system.") (citations and internal quotation marks omitted).

5

among the individual litigants or groups of litigants will not preclude a finding of commonality.") (citations omitted); *Robert E. v. Lane*, 530 F. Supp. 930, 942 (N.D. Ill. 1981) (finding common factual issues when plaintiff-prisoners alleged a prison's entire mental health care system was deficient, and finding a common legal question in whether the mental health care system comported with constitutional standards); *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("[B]ecause they do not also involve an individualized inquiry for the determination of damage awards, injunctive actions 'by their very nature often present common questions satisfying Rule 23(a)(2).'") (*quoting* 7A Charles Alan Wright et al., *Federal Practice and Procedure* § 1763, at 247 (2d ed. 1986)).

**C. Typicality**

The third requirement of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ."[5] Fed. R. Civ. P. 23(a)(3). The Ninth Circuit has summarized this element as follows: "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

In a case concerning disabled prisoners' claims that parole proceedings violated the Americans with Disabilities Act and the Rehabilitation Act, the Ninth Circuit explained,

> Where the challenged conduct is a policy or practice that affects all class members, the underlying issue presented with respect to typicality is similar to that presented with respect to commonality, although the emphasis may be different. In such a case, because

---

[5]The Ninth Circuit has noted that the commonality and typicality requirements are similar: "Although the commonality and typicality requirements tend to merge into one another, they are stated differently. The commonality requirement is said to be met if plaintiffs' grievances share a common question of law or of fact. Typicality, by contrast, is said to require that the claims of the class representatives be typical of those of the class, and to be 'satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (citations omitted).

6

> the cause of the injury is the same . . . the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class. We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.

*Armstrong v. Davis*, 275 F.3d 849, 868-69 (9th Cir. 2001). In the district court, the *Armstrong* plaintiffs established that California's parole proceedings discriminated against disabled prisoners. *Id.* at 854. Specifically, due to the parole authority's failure to make proper accommodations, a number of prisoners forfeited their right to a hearing, and other prisoners were unable to represent themselves adequately. *Id.* In its typicality analysis, the Ninth Circuit concluded that the prisoners' injuries were identical because they suffered from "a refusal or failure to afford them accommodations as required by statute, and are objects of discriminatory treatment on account of their disabilities." *Id.* at 869. The court also found that on a more specific level, "[a]lthough there are minor differences in the nature of the specific injuries suffered by the various class members, the differences are insufficient to defeat typicality." *Id.*

In the present case, the named plaintiffs' claims are reasonably coextensive with those of absent class members. Each plaintiff claims he has been injured by the risk of physical injury and unnecessary infliction of pain due to ESP's inadequate medical system. Thus, the unnamed class members have injuries similar to those of the named plaintiffs, and the injuries result from the same injurious course of conduct.

Moreover, the typicality analysis utilized in *Armstrong* can also be applied here. Plaintiffs claim that ESP fails to afford them the level of medical care required by the Eighth Amendment; thus, on a general level, the Plaintiffs' injuries are identical. Further, on a more specific level, Plaintiffs allege they face a risk of injury and unnecessary pain due to ESP's inadequate medical system. Although the risk will differ according to each plaintiff's current medical condition, such differences do not defeat typicality given Rule 23(a)(3)'s "permissive standards." *See also Baby Neal*, 43 F.3d at 58 ("Commentators have noted that cases challenging the same unlawful conduct

which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.") (*citing* 1 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 3.13 (3d ed.1992)).

**D. Adequacy of Representation**

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class . . . ." Fed. R. Civ. P. 23(a)(4).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.  The Supreme Court has noted that because the commonality and typicality requirements are concerned with whether the interests of the absent class members will be fairly and adequately protected, those requirements tend to merge with the adequacy-of-representation requirement.  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  What constitutes adequate representation is a question of fact.  *Soc. Services Union v. County of Santa Clara*, 609 F.2d 944, 947 (9th Cir. 1979).

With respect to whether Plaintiffs have any conflicts of interest with other class members, Defendants argue that this court should deny class certification because some ESP inmates are pursuing their own separate actions in this district.  Defendants do not state whether these plaintiffs are pursuing injunctive relief.  If they are not, the plaintiffs could continue to assert their claims for damages in separate actions.  *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) ("[T]he general rule is that a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events.").  If the other ESP plaintiffs are indeed seeking injunctive relief, there are several management options open to the court.  *See* 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1792, at 10 (3d ed. 2005) ("When similar actions, either class or individual, are proceeding before several courts, one or more of the tribunals may stay the proceeding before it

8

pending the outcome of the other action."). Thus, even if there are parallel actions pending in this district, that fact alone does not pose a problem to certifying a class.

Defendants also argue that Plaintiffs would be inadequate class representatives because they may be transferred to another facility. This contention is without merit. The fluidity of a prison's population is a factor that supports class certification. *Stewart v. Winter*, 669 F.2d 328, 334 (5th Cir. 1982). If a named plaintiff's release or transfer renders him an inadequate representative, the proper remedy is to permit his substitution by a new class representative. *Id.*

The court also finds that Plaintiffs have submitted persuasive evidence that they and their counsel will prosecute this action vigorously on behalf of the class. Defendants do not submit evidence to the contrary.[6]

**E.  Rule 23(b)(2)**

As mentioned above, in addition to fulfilling all of Rule 23(a)'s requirements, Plaintiffs must show that they meet one of the subsections in Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(2). Rule 23(b)(2) requires Plaintiffs to show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." A court may certify a class under Rule 23(b)(2) if class members complain of a pattern or practice that is generally applicable to the whole class. *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). For instance, in *Walters*, the Ninth Circuit found class certification was appropriate under Rule 23(b)(2) when a group of aliens sought to challenge the constitutionality of the Immigration and Naturalization Service's official forms and procedures. *Id.* In the present case, because Plaintiffs challenge ESP's medical system, which they allege subjects all of them to a significant

---

[6]Defendants contend that Plaintiff Terrence Brothers would not adequately represent the class because he has attempted to negotiate a settlement with NDOC, and he is no longer classified to ESP. Defendants contentions regarding Brothers are moot, as he has withdrawn as a named plaintiff in this action. (*See* Pls.' Supplemental Br. (#32) at 26 n.8.) Defendants' contention that Plaintiffs have not exhausted their administrative remedies is discussed below.

9

risk of injury and unnecessary infliction of pain, certification under Rule 23(b)(2) is appropriate.[7]

**F. Exhaustion**

On January 13, 2009, this court ordered briefing on the issue of whether Plaintiffs exhausted their administrative remedies under the Prison Litigation Reform Act pursuant to 42 U.S.C. § 1997e(a). After reviewing the parties' submissions, the court finds Defendants have failed to meet their burden of showing nonexhaustion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).

Defendants first argue that Plaintiff Riker's grievance may have been untimely because his grievance references an appointment that may have violated an administrative regulation that sets a six-month deadline for filing grievances. The court agrees with Plaintiffs that Defendants' argument is without merit, as Riker's first grievance states that he is complaining about his "current" lack of medical care. (Pls.' Supplemental Br. (#32) Ex. V at 1.)

Second, Defendants argue that Plaintiffs' claims were not administratively exhausted because their prison-level grievances do not address the claims prosecuted in this action, that is, the inadequacy of ESP's medical care policies. The court disagrees. In *Griffin v. Arpaio*, the Ninth Circuit held that if a prison's grievance procedures do not specify a requisite level of detail, a grievance meets PLRA's exhaustion requirement if "it alerts the prison to the nature of the wrong for which redress is sought." No. 06-16132, 2009 WL 539982, at *2 (9th Cir. Mar. 5, 2009). The Ninth Circuit further stated that

> [a] grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.

---

[7]Other courts have also certified classes under Rule 23(b)(2) when prisoners challenge the constitutionality of prison conditions. *See* 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1776, at 112 n.18 (3d ed. 2005) (collecting cases where Rule 23(b)(2) class actions were used to challenge prison policies or procedures alleged to violate prisoners' Eighth Amendment right to be free from cruel and unusual punishment).

10

*Id.* at *3. Here, Defendants have made no showing that Plaintiffs failed to meet any specificity requirement for prison grievances. Moreover, Plaintiffs' grievances are sufficient to alert ESP officials of the alleged inadequate medical care. *Griffin* requires no greater showing.

Third, Defendants argue that Plaintiffs' grievances demonstrate that they were not denied constitutionally adequate medical care. Defendants' contention is not well taken. Because this case is at the class certification stage, any discussion of the merits is premature. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").

Fourth, Defendants argue that Plaintiff Mark Whittington did not fully exhaust his administrative remedies with respect to one of his three grievances. Because Defendants offer no evidence of nonexhaustion, their contention is without merit.

Finally, Defendants argue that Plaintiff Jeffrey Hosmer did not properly exhaust his administrative remedies because he violated an administrative regulation against discussing more than one issue in a grievance. Even assuming Hosmer violated this regulation, because prison officials fully addressed the two-issue grievance on its merits, Hosmer has properly exhausted his administrative remedies. *See Jones v. Stewart*, 457 F.Supp.2d 1131, 1136 (D. Nev. 2006).

**G. Notice**

Although Rule 23 only requires notice to class members in a Rule 23(b)(3) action, *see* Fed. R. Civ. P. 23(c)(2)(B), the Rule also states that a court may direct appropriate notice to the class in a Rule 23(b)(2) case, Fed. R. Civ. P. 23(c)(2)(A). Posting or distributing a court-approved form of notice to inmates is the common method of serving notice on inmate classes. 8 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 25:32 (4th ed. 2002); *see also Dean v. Coughlin*, 107 F.R.D. 331, 335 (S.D.N.Y. 1985) (ordering notice to a prisoner class via distribution to each inmate and posting notice in the law library, clinic, and each housing area for the pendency of the

suit). Moreover, a leading treatise provides that giving some type of notice in Rule 23(b)(2) actions is probably the best practice in most cases. *See* 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1793, at 15 (3d ed. 2005). The court will exercise its discretion to order notice to the absent class members as specified below.

**H. Certification Order**

Rule 23(c)(1)(B) provides that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." The court therefore provides the following matters pursuant to Rule 23(c)(1)(B):

The class is defined as "all prisoners who are now, or in the future will be, in the custody of the Nevada Department of Corrections at Ely State Prison in Ely, Nevada."

The court will define the class's claims as set forth in the Amended Complaint, specifically, that the systemically inadequate medical care provided to ESP prisoners violates their rights under the Eighth and Fourteenth Amendments to the United States Constitution.

The court also appoints Plaintiffs' counsel as class counsel pursuant to Federal Rule of Civil Procedure 23(g). Rule 23(g) sets forth the following requirements concerning appointment:

> (1) *Appointing Class Counsel.* Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
>    (A)   must consider:
>
>        (i)   the work counsel has done in identifying or investigating potential claims in the action;
>        (ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>        (iii)   counsel's knowledge of the applicable law; and
>        (iv)   the resources that counsel will commit to representing the class;
>
>    (B)   may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
>
>    (C)   may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

      (D)    may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

      (E)    may make further orders in connection with the appointment.

(2) **Standard for Appointing Class Counsel.** When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4).

. . . .

(4) **Duty of Class Counsel.** Class counsel must fairly and adequately represent the interests of the class.

Plaintiffs have provided persuasive evidence on each of the Rule 23(g)'s requirements. In response, Defendants offered only largely irrelevant arguments that are unsupported by any evidence. The court therefore orders that Plaintiffs' attorneys shall be appointed as class counsel.

**IV.	Conclusion**

Plaintiffs and their counsel have fully met Federal Rule of Civil Procedure 23's requirements for class certification. Because class certification is warranted, Defendants motion to sever the named Plaintiffs' claims into separate actions is denied as moot.

///

///

///

///

///

///

///

///

///

///

///

1   IT IS THEREFORE ORDERED that Plaintiffs' Motion for Class Certification (#7) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Sever (#23) is DENIED as moot.

IT IS FURTHER ORDERED that the parties shall submit a proposed notice within 30 days that includes the following matters: (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, and (4) that a class member may enter an appearance through an attorney if the member so desires. The court urges the parties to work together in the drafting of the notice. Upon this court's approval, the notice shall be posted in the law library, infirmary, and each housing area of ESP for the duration of this action.

IT IS SO ORDERED.

DATED this 31st day of March 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE