UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| DAVID RIKER et al., ) | |
| Plaintiffs, ) | 3:08-CV-00115-LRH- VPC |
| v. ) | |
| JAMES GIBBONS et al., ) | |
| Defendants. ) | |

COURT APPROVED

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
*Riker v. Gibbons, Case No. 3:08-CV-00115-LRH-VPC (D. Nev.)*

## TO:   ALL PRISONERS AT THE ELY STATE PRISON, ELY, NV

## THE PURPOSE OF THIS NOTICE IS TO INFORM YOU OF:

- **THE TERMS OF THE PROPOSED SETTLEMENT AGREEMENT**

- **THE REASONS WHY CLASS COUNSEL BELIEVE THAT SETTLEMENT IS IN THE BEST INTERESTS OF THE CLASS**

- **YOUR RIGHT TO OBJECT TO THE SETTLEMENT**

## BACKGROUND

In March of 2008, a federal lawsuit was filed in the U.S. District Court for the District of Nevada alleging inadequate medical care at Ely State Prison (ESP) in Ely, Nevada.  An Amended Complaint in this action was filed on or about April 16, 2008.  Lawyers with the National Prison Project of the American Civil Liberties Union Foundation (ACLU), the ACLU of Nevada, and Holland & Knight, LLP appeared on behalf of the named plaintiffs in the lawsuit.  Plaintiffs requested that the lawsuit be recognized as a Class Action, so that the interests of all prisoners at ESP would be represented.  The Court subsequently granted class certification to a class of prisoners defined as "all prisoners who are now, or in the future will be, in the custody of the Nevada Department of Corrections at Ely State Prison in Ely, Nevada."  The lawsuit did not ask for any money damages.  Instead, it asked that the Court declare that the medical care at ESP was unconstitutional, and order Defendants to undertake changes to the provision of medical care at the prison.

## PROPOSED SETTLEMENT AGREEMENT

The Parties have agreed to settle this lawsuit on the terms stated below.  The Proposed Settlement Agreement does not constitute any admission of liability by the Defendants.  Defendants deny the truthfulness of the claims in this lawsuit and deny having engaged in any culpable conduct.

After much deliberation, Class Counsel have concluded that the terms and conditions of the Proposed Settlement Agreement are in the best interests of the Class.

**1.    *Why Class Counsel Support the Settlement***

In working on this case, Class Counsel have visited ESP many times.  We have interviewed many prisoners and corresponded with hundreds more about medical care at ESP.  We have reviewed many records.  Two medical experts hired by Class Counsel, a medical doctor and a nurse practitioner, inspected ESP for three days, interviewed prisoners and ESP medical staff, reviewed records, and observed multiple aspects of care at the facility.  In deciding to support a settlement of this lawsuit, Class Counsel carefully weighed the benefits of the proposed settlement terms against the risks of an unfavorable outcome in the litigation and the time needed to prosecute the case through a trial and likely appeals.  After considering all these issues, it is our professional opinion that the Proposed Settlement Agreement will improve medical care for the Class more quickly and comprehensively than any result the Class might obtain through further litigation of this lawsuit.

**2.    *A Summary of the Key Terms of the Proposed Settlement Agreement***

- The Parties agree to the appointment of an expert medical monitor for a term of two years.  The monitor shall inspect ESP three months after the Agreement is finalized and every six months thereafter to evaluate Defendants' compliance with the terms of the Agreement.  If, at the end of two years, Defendants have achieved substantial compliance with the terms of the Agreement, medical monitoring shall cease.  If Defendants have not achieved substantial compliance with the Agreement, Plaintiffs' counsel may bring Defendants' alleged non-compliance to a mediator and the mediator shall determine whether or not medical monitoring shall continue.  The mediator's decisions are binding on both parties.  In this regard, Defendants shall achieve substantial compliance in the following areas, as confirmed by the Monitor, according to the timetable set forth in the Agreement, and summarized as follows[1]:

- **MEDICATIONS**
  - The Monitor will evaluate and propose any necessary changes to the timely dispensing and administration of medications at ESP, as well as increased oversight and accountability mechanisms that may be necessary in the opinion of the Monitor, for the safe and timely administration and dispensing of medication at ESP.  Defendants will set-up a medication dispensing and administration system that complies with the Monitor's recommendations.
  - Defendants shall ensure that patients refusing medication are provided counseling regarding the consequences of incomplete adherence; and shall ensure that both the refusal and the counseling is documented and in-person.
  - When three consecutive doses are refused by the patient, a practitioner shall be notified.  Subsequently, the practitioner shall meet with the patient and discuss his refusal to take the medication, whereupon the medication shall be discontinued or the patient shall agree to take the medication.  Defendants shall ensure that if medication is not administered to a patient, the reason is documented and signed by the health staff responsible for medication administration.
  - ESP staff shall ensure that refills or renewals of nurse-administered medications

---

[1] This summary is not intended to act as a substitute for the terms of the Settlement Agreement.

are done in a timely manner.  Patients shall be responsible for requesting "keep-on-person" (KOP) refills or renewals of their refillable medications, in a timely manner and ESP medical staff shall ensure that timely KOP refills are renewed before the patients' prescription supply runs out.

o  Defendants shall develop protocols for the treatment of acute and chronic pain, including the safe administration of narcotics, if and where appropriate, for KOP medications, outside the infirmary and treatment of acute pain that does not involve placement of the patient in the infirmary.

o  In consultation with the monitor, Defendants shall ensure that medication is administered at a medically appropriate time and in a medically appropriate manner, including dietary considerations.

- **CHRONIC CARE**

  o  The Monitor shall evaluate the chronic disease management process, and propose any necessary changes to that process, including enrollment and follow-up care at ESP.

  o  In consultation with the Monitor, Defendants shall ensure that for each individual identified with a chronic illness requiring ongoing medical care, a health care treatment plan shall be developed that includes, at a minimum, the following:  a written initial evaluation containing a plan to achieve good disease control by a practitioner; regular check-ups at least once every three (3) months by a practitioner; a yearly check-up with a physician only if the patient is in poor control of his disease and/or if determined necessary by the practitioner; and baseline and yearly laboratory work, and other diagnostics appropriate for the disease as needed.  The treatment plan's short and long range goals will be reviewed and updated at least annually in a face-to-face assessment by the practitioner or more frequently as determined by the practitioner.  Any patient with more than one chronic disease will not require separate chronic care clinic visits for each disease, but should be treated for all diseases during his annual chronic care visit or as directed by the practitioner.

- **SICK CALL**

  o  The Monitor shall evaluate and propose any necessary changes in the Sick Call process at ESP and Defendants shall implement those changes.  Defendants will ensure that Licensed Practical Nurses (LPNs), Registered Nurses (RNs) and mid-level practitioners, such as Advanced Practitioners of Nursing (APNs), perform only functions within the scope of their state professional licenses and according to proper protocols, and that each is properly supervised according to the scope of his/her license.  The Monitor shall assess the sufficiency of the medical staffing to meet the medical-staffing needs at ESP, and to make recommendations for any changes, where indicated, and Defendants shall ensure that any indicated changes are implemented.  In no event, shall a medical doctor be available less than two (2) days per week.

  o  Defendants shall ensure that sick call will be available seven days per week to patients in all areas of the population at ESP, including general population, segregation units or "lock-up cells," isolation units, the condemned mens' unit and special management units.  Medical kites will be picked up by nurses on a daily

4

basis from each unit and triaged by a nurse or higher level staff no later than twenty-four (24) hours after receipt.  A patient requesting medical care shall be seen by a Registered Nurse (RN) or higher level practitioner within 48 hours.

o   Any patient who is seen by a nurse two consecutive times for the same symptoms will be referred to a higher level practitioner without incurring an additional co-pay charge for a medical visit.  This does not require two sick calls before a patient can be referred to a higher level practitioner; a registered nurse may make such a referral after a single sick call in accordance with appropriate triage protocols.

o   Patients presenting symptoms or patients having symptoms reported on their behalf, requiring emergency or infirmary care shall be given timely and appropriate medical care.

- **INTRA-SYSTEM TRANSFERS AND ASSESSMENTS**
  o   The Monitor will evaluate and propose appropriate changes in the medical assessments and evaluation process performed as a result of intra-systems transfers into ESP.   In particular, all prisoners entering ESP should be medically screened by a registered nurse or higher level practitioner within 12 hours, but in no event shall such screening occur later than 24 hours of admission.  Such screening shall take place in a confidential setting and the records of HIV positive patients shall be labeled in such a manner as to prevent inadvertent disclosure of a patient's HIV status.  The results of this screening shall be documented in each patient's medical record.  The minimum components of the screening shall include, but shall not be limited to, the following:  documented inquiry into current illness, communicable diseases, current tuberculosis status, allergies, current medications, dental status, current mental health problems, suicidal ideation, chronic health problems, pending specialty appointments, signs of trauma, and a documented explanation of the procedures for access to medical services.

  o   In addition to explaining the procedures for accessing care, ESP staff shall provide all patients at intake with a written description of these procedures that the patients may keep.

- **SCHEDULED OFF-SITE SERVICES**
  o   The Monitor shall evaluate and propose any necessary changes in the system for referring ESP patients for off-site medical consultations and Defendants will ensure that the changes are implemented.

  o   Defendants shall ensure that patients requiring necessary medical services that cannot be provided at ESP in a timely manner or at all, shall be provided timely access to an outside specialist for diagnostic services or medical care, according to the priority or urgency of the ordering clinician.  Where approval or other response by the Utilization Review Panel is required for specialty care, including for follow-up care, such approval or other response shall timely be documented in a tracking system.

  o   A member of the NDOC health staff shall be designated to track all requests for specialty and off-site care, the status of such requests, provision of care, and any necessary follow-up or after care ordered for ESP patients.   That same staff member will work with other health care staff and custody staff to ensure that the ordered care is provided.   Subject to any required approval by the Utilization

5

Review Panel, treatment orders shall be carried out in the manner prescribed by the specialist, unless a deviation or override is ordered by the practitioner at the facility.  Such a deviation or override must be affirmatively medically justified and documented in the medical record of the patient.

- **INFIRMARY CARE**
  - o  Under the guidance of the Monitor, Defendants will ensure that ESP provides adequate infirmary care for patients requiring close medical monitoring and/or nursing assistance.
  - o  All infirmary patients must be within sight or sound of nursing or other health care staff at all times.  Physician and/or mid-level practitioner rounds shall be conducted on a daily basis or as specified by the categories of care being provided, and an RN or higher level medical provider shall be present at the infirmary each day with a minimum of eight (8) hours of RN care and sixteen (16) hours of LPN care per day.  Custody staff will not provide any routine medical care or medical observation in the infirmary.  Patients admitted in the infirmary will not have to "kite" (submit a medical request form) for medical care.

The above summary does not include all the terms and conditions of the Proposed Settlement Agreement.  The only complete statement of the terms of the proposed settlement is found in the actual Proposed Settlement Agreement.  You may obtain a copy of the Proposed Settlement Agreement by writing to:

Amy Fettig
ATTN:  RIKER V. GIBBONS, 3:08-cv-00115-LRH-VPC
ACLU National Prison Project
915 15th St., NW, 7th Floor
Washington, DC 20005

### 3.    The Settlement Must Be Approved By The Court Before It is Final.

Under federal class action rules, before this lawsuit can be settled, the Court must find that the settlement terms are fair, reasonable, and adequate to all Parties.  Court approval is an additional level of protection for all class members.   While Class Counsel strongly believe that this settlement is in the best interests of all current and future prisoners at ESP, we recognize that some class members may not support the settlement.  If you do not think this settlement is a good idea, you have the right to file a formal objection with the Court.

After reviewing all timely objections, the Court will hold a Fairness Hearing on _____October 25_____, 2010 at _10:00 am_  in the Bruce R. Thompson Federal Building and U.S. Courthouse in Reno, Nevada, to decide whether or not to approve the Proposed Settlement Agreement.  If the Court decides that the settlement terms are fair, reasonable, and adequate, then the Proposed Settlement Agreement will become final.  If the Court approves the Proposed Settlement Agreement, the parties will jointly move for the case to be dismissed with prejudice.  Thereafter, any disputes regarding implementation of the Agreement will be handled through the dispute resolution mechanism set forth in the Agreement and/or state court.

If the Court decides not to approve the Proposed Settlement Agreement, the settlement will be voided and will have no further effect.  The case will not be settled, but will go to trial.  If that happens, there is no assurance that any decision at trial will be in favor of the class members, or would be upheld on appeal; or that, even if there is a favorable trial decision, it will be as favorable to class members as the Proposed Settlement Agreement would have been.

***4.      You Have the Right to Object to the Settlement.***

If you have no objection to the Proposed Settlement Agreement, you do not have to do anything.

If, however, you believe the Court should <u>not</u> approve the settlement because you object for any reason to the terms of the Proposed Settlement Agreement, you may object.  You must submit your objection in writing to the Court. Any objection must contain the following information:

      a.   The case name and number:   RIKER V. GIBBONS, 3:08-cv-00115-LRH-VPC

      b.   Your full name and NDOC number

      c.   A concise explanation of why you object to the Proposed Settlement Agreement

For your objection to be considered by the Court, you must mail it by <u>Sept. 10, 2010</u> to the Clerk of the Court, with a copy to all Counsel, at the following addresses:

| | |
|---|---|
| Clerk of the Court<br>ATTN:  RIKER V. GIBBONS, 3:08-cv-00115-LRH-VPC<br>Bruce R. Thompson Federal Building and U.S. Courthouse<br>United States District Court<br>District of Nevada – Reno<br>400 S. Virginia Street<br>Reno, NV 89501 | Amy Fettig<br>Staff Counsel<br>ATTN:  RIKER V. GIBBONS, 3:08-cv-00115-LRH-VPC<br>ACLU National Prison Project<br>915 15th St. NW, 7th Floor<br>Washington, DC 20005 |
| Michon Martin<br>Deputy Attorney General<br>Nevada Attorney General<br>ATTN:  RIKER V. GIBBONS, 3:08-cv-00115-LRH-VPC<br>100 North Carson Street<br>Carson City, NV 89701-4717 | |

***5.      Money Issues***

This lawsuit does not involve money damages, so whether or not this case settles or goes to trial, no class member will obtain money from the Defendants.

The proposed settlement provides that Defendants shall pay Plaintiffs' Counsel a one-time lump sum of $325,000 to cover their fees and costs for the last three years.  Any fees and costs incurred by Plaintiffs' Counsel during the monitoring period of this settlement agreement shall be covered solely by Plaintiffs' Counsel.

***6.      Effect on Pending Lawsuits Regarding Medical Care at ESP***

The Proposed Settlement Agreement will not preclude individual damages claims by ESP prisoners.

The Proposed Settlement Agreement will not preclude equitable claims for injunctive or declaratory relief tailored to the specific circumstances of the individual prisoner that are filed <u>after</u> the dismissal of *Riker v. Gibbons* lawsuit with prejudice.

However, individual equitable claims for injunctive or declaratory relief for medical care issues filed <u>before</u> the *Riker v. Gibbons* lawsuit is dismissed with prejudice may be affected by the settlement of this case.

**7.**     ***Questions About the Proposed Settlement Agreement***

If you have any questions about the proposed settlement, you may contact Class Counsel by writing to:

> Amy Fettig
> Staff Counsel
> ATTN:  RIKER V. GIBBONS, 3:08-cv-00115-LRH-VPC
> ACLU National Prison Project
> 915 15th St. NW, 7th Floor
> Washington, DC 20005

**<u>ORDER</u>**

**APPROVED:**

DATED this 28th day of July, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

8