UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DAVID RIKER, *et al.*,   )
                         )
    Plaintiffs,          )   3:08-cv-00115-LRH-VPC
                         )
vs.                      )
                         )   **ORDER**
JAMES GIBBONS, *et al.*, )
                         )
    Defendants.          )
_____/

This matter came before the Court for a fairness hearing on October 25, 2010, at 10:00 a.m., regarding the proposed settlement agreement in this action seeking class-wide improvements in medical care for prisoners at Ely State Prison (ESP). Plaintiffs and defendants each filed motions (Docket #166 and #168) asking this Court to approve the proposed settlement agreement, including the provision of negotiated attorneys' fees and costs. The Court has carefully reviewed the entire settlement agreement as well as the parties' moving papers. The Court has further reviewed objections from class members and responses by counsel to the same. The Court has heard oral argument from plaintiffs' and defendants' counsel at the fairness hearing. This order approves the settlement agreement and approves the payment of negotiated attorneys' fees and costs to plaintiffs in the lump sum amount of $325,000.

**I.  Procedural History**

This is a class action lawsuit in which plaintiffs allege that defendants have provided unconstitutionally inadequate medical care for prisoners at Ely State Prison. In the amended complaint, plaintiffs seek declaratory and injunctive relief, but not monetary damages. (Docket

#15).  On March 31, 2009, the Court approved plaintiffs' motion for class certification, defining the class as "all prisoners who are now, or in the future will be, in the custody of the Nevada Department of Corrections at Ely State Prison in Ely, Nevada."  (Docket #40, at p. 12).  On September 30, 2009, this Court denied defendants' motion for reconsideration of the stipulated discovery plan.  (Docket #97).  Settlement discussions between counsel began in January 2010, with Magistrate Judge Cooke conducting a settlement conference on June 10, 2010.  (Fettig Decl., Martin Decl., Docket #141).  On July 15, 2010, the parties jointly moved for approval of the proposed settlement agreement.  (Docket #144).  The proposed settlement agreement is at Docket #144-1. The parties also submitted a proposed Class Notice of Settlement, at Docket #144-2, which this Court approved on July 28, 2010.  (Docket #146 and #147).  The Court's order set the fairness hearing for October 25, 2010, directed class member objections to be filed by September 13, 2010, and directed the parties' responses to the objections to be filed by October 15, 2010.  (Docket #146).

**II. Discussion**

    **A. Notice to the Class was Reasonable**

Adequacy of notice to the class is the first issue that courts address when evaluating the fairness of a proposed class settlement.  *See, e.g.*, *In re Immune Response Sec. Lit.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007).  Rule 23(e) requires that notice be provided "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  In the instant case, notice of the proposed class action settlement was accomplished by distributing a written notice to each ESP prisoner in both English and Spanish, and posting both English and Spanish versions of the notice in common areas throughout ESP, including the housing tiers, dining areas, law library, work areas, visitation areas, the laundry, the infirmary, and recreation areas.  (Martin, McDaniel, and Fettig Declarations).  The class notice was also added to the ESP orientation handbook, which each new prisoner receives upon arriving at ESP.  (*Id.*).  Provision of notice in this manner is sufficient in institutional litigation.  *See, e.g., Ruiz v. McKaskle*, 724 F.2d 1149, 1152-53 (5th Cir. 1984) (notice placed in each housing unit's "writ room," published in prison's newspaper, and posted in housing units); *Diaz v. Romer*, 801 F. Supp. 405, 408 (D. Colo. 1992) (notice posted in prison housing units and law libraries); *Gaddis v. Campbell*, 301 F. Supp. 2d 1310, 1314 (M.D. Ala.

2004) (notice placed on bulletin boards in dormitories, law libraries, and dining areas). The notice provided to the class in the instant case was reasonable, adequate, and sufficient to inform class members of the terms of the settlement and their rights related to the proposed settlement.

### B. Settlement Agreement is Fair, Adequate, and Reasonable

#### 1. Standard under Fed. R. Civ. P. 23(e)

Federal Rule of Civil Procedure 23(e) provides that a class action shall not be dismissed or compromised without the approval of the court. "If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e) requires court-approval of settlements in class actions to protect "unnamed class members from unjust or unfair settlements affecting their rights when the representatives . . . are able to secure satisfaction of the individual claims by a compromise." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The court must determine "whether a proposed settlement in a class action is fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

In assessing the fairness, adequacy, and reasonableness of a settlement agreement, the court may consider some or all of these factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining a class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (citation omitted), *overruled on other grounds, Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 617 (2010).[1] Another formulation generally used in

---

[1] In *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, the Ninth Circuit overruled the portion of *Molski* that involved the standard for determining when monetary relief predominates over declaratory and injunctive relief, and thus precludes certification of a Rule 23(b)(2) class. "To the extent *Molski* required the district court to inquire only into the intent of the plaintiffs and focus primarily on determining whether reasonable plaintiffs would bring suit to obtain injunctive or declaratory relief even in the absence of possible monetary recovery, *see Molski*, 318 F.3d at 950 & n.15, it is overruled." *Dukes*, 603 F.3d at 617. The part of *Molski* setting forth factors for determining whether a class action settlement is fair, adequate, and reasonable, *Molski*, 318 F.3d at 953, was unaffected by the *Dukes* decision.

determining whether a class action settlement is fair, reasonable, and adequate includes these factors: (1) likelihood of recovery or success; (2) amount and nature of discovery or evidence; (3) settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendation of neutral parties, if any; (7) number of objectors and nature of objections; and (8) the presence of good faith and the absence of collusion.  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:43 (4th ed. 2002).

The factors listed above are not exhaustive, and different factors may predominate in different contexts.  *See Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice v. Civil Service Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.  *Id.* at 628.

The burden of proving the fairness of a settlement is on the proponents.  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:42 (4th ed. 2002).  "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."  *Id*.  "[T]here is a strong judicial policy that favors settlement, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Lit*., 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  Below, the relevant factors in the instant case are discussed.

### 2. Analysis of Factors

#### a. Strength of Plaintiffs' Case

The likelihood of recovery involves weighing the strength of the plaintiffs' case on the merits against the relief offered in settlement.  4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:44 (4th ed. 2002).  In the instant case, the amended complaint alleges that defendants systematically provided inadequate medical care at Ely State Prison in violation of § 1983, the Eighth Amendment, and the Fourteenth Amendment.  (Docket #15).  A claim of

inadequate medical treatment does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer v. Brennan*, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.*

Plaintiffs present a substantial case supporting class-wide injunctive relief, however, plaintiffs would face significant obstacles in proving their deliberate indifference claims at trial. Class counsel states that, given the complex evidence that would be required to establish defendants' liability, along with the inherent risks of litigation, the proposed settlement agreement achieves guaranteed relief for the class. (Docket #166-1, at p. 4). Class counsel also represents that, during the course of this litigation, defendants have begun to implement improvements to medical care offered at ESP, including hiring a full-time doctor. (Docket #166-1, at p. 5). The settlement agreement sets forth a detailed plan based on the standards of the National Commission on Correctional Heath Care (NCCHC), which is widely-accepted as a model for best-practices in correctional health care. The plan in the settlement agreement covers reforms such as improvements in the administration of medications, chronic care treatment, infirmary care, off-site treatment services, and the sick call system. (Docket #144-1, Settlement Agreement). The settlement agreement calls for the appointment of an independent monitor, Dr. Ronald Shansky, a medical expert in prison medicine, to assist in the development of necessary medical reforms and to monitor ESP's compliance with those reforms. (Docket #144-1, at pp. 17-20). The monitoring period will last for two years, unless extended pursuant to the terms of the settlement agreement. (Docket #144-1, at p. 20). During on-site inspections, Dr. Shansky will utilize a "monitoring tool," which was developed and submitted with the proposed settlement agreement, when assessing the prison's compliance. (Docket #144-1, at p. 19; Appendix to Settlement Agreement).

The terms of the proposed settlement agreement substantially achieve the goals of the lawsuit. If the case continued to be litigated, plaintiffs and defendants would undertake further discovery, involving expert witnesses, additional tours of ESP, and other aspects of costly litigation. The proposed settlement agreement gives the class member plaintiffs appropriate medical care now, without the delay and inherent risks involved in further litigation.

### b. Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:50 (4th ed. 2002). Class action challenges to conditions of confinement are necessarily complex. Pursuing further litigation and trial, the outcome of which is uncertain, risks losing the relief that is already guaranteed to plaintiffs in the proposed settlement agreement. Litigation, including discovery, would be complex and lengthy. As discussed above, to meet the deliberate indifference standard, plaintiffs face a heavy burden, as they would have to present extensive statistical, anecdotal, and expert evidence. The continuation of this litigation would involve substantial motion practice, discovery disputes, trial, and potential appeals. All of this involves risk, expense, complexity, and a delay until plaintiffs may ultimately gain the relief sought in this lawsuit.

### c. Extent of Discovery Completed and Stage of the Proceedings

There is no precise measure for what constitutes sufficient evidence to enable a court to analyze the contested questions of fact. Moreover, "the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:45 (4th ed. 2002). In this case, both parties conducted initial discovery. Plaintiffs' medical experts have conducted a three-day tour and review of ESP prior to the commencement of settlement negotiations. (Fettig Decl.). Prior to that, class counsel had conducted significant factual investigation for over a year prior to filing the original complaint. (*Id.*). The absence of extensive formal discovery is immaterial where the parties have sufficient information to make an informed decision about settlement. *See In re Mego Financial Corp. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). In the instant case, sufficient discovery

was conducted to allow counsel to make an informed decision regarding settlement.

### d. Experience and Views of Counsel

The recommendation of experienced counsel in favor of settlement carries a "great deal of weight" in a court's determination of the reasonableness of a settlement. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). "The weight accorded to the recommendation of counsel is dependent on a variety of factors; namely, length of involvement in litigation, competence, experience in the particular type of litigation, and the amount of discovery completed." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:47 (4th ed. 2002). In the instant case, plaintiffs are represented by the National Prison Project of the ACLU Foundation (NPP), the ACLU of Nevada, and Holland & Knight, LLP. The ACLU has extensive experience litigating class actions regarding prison conditions. *See, e.g.*, *Hadix v. Johnson*, 65 F.3d 532, 534 (6th Cir. 1995) (noting that the director of NPP is "a nationally recognized expert in federal court institutional litigation); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1057 (D. S.D. 2000) (noting that NPP attorneys "pursued the class' interests vigorously."); *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1175 (D. Nev. 1999) (the NPP's lawyers "touted as being among the most experienced in the nation in this field"), *abrogation on other grounds recognized by Laube v. Allen*, 506 F. Supp. 2d 969, 988 (M.D. Ala. 2007); *Diaz v. Romer*, 801 F. Supp. 405, 410 (D. Colo. 1992) (class settlement approved where class counsel was assisted "by experts in the field of prison rights litigation working with the National Prison Project of the American Civil Liberties Union."). In addition, Holland & Knight's Community Services Team, which also serves as plaintiffs' counsel in this action, has a distinguished record of providing legal representation to under-represented individuals and groups, and has been judicially recognized for such work. *Concerned Parents of Jordan Park v. St. Petersburg Hous. Auth.*, 934 F. Supp. 406, 411 (M.D. Fla. 1996) ("the Community Services Team at Holland & Knight brings a unique and powerful force to bear on issues affecting traditionally unrepresented and under-represented individuals. It has the financial ability and legal acumen to prosecute complex cases *pro bono publico*, in the public interest"). In class actions involving similar claims as the instant action, courts have approved settlement agreements, in part, because class counsel were experienced and competent civil rights attorneys. *See Gaddis v. Cambell*, 301 F.

1  Supp. 2d 1310 (M.D. Ala. 2004); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1246 (M.D. Ala. 2004).

2  In this case, class counsel has extensive experience litigating prisoner civil rights claims, and
3  Eighth Amendment claims in particular. (Docket #166-1, at p. 8). Counsel engaged in lengthy and
4  vigorous arm's-length negotiations with defendants' attorneys in the Nevada Attorney General's
5  Office. (Fettig and Martin Declarations). Class counsel has consistently consulted with experts
6  throughout this litigation, and based on these consultations, has determined that the terms agreed
7  upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims.
8  (Docket #166-1, at p. 8). These factors weigh heavily in favor of approving the settlement
9  agreement.

### e. Equal Distribution of Relief

Courts scrutinize the amount offered in settlement to determine whether the plaintiffs received adequate compensation for releasing their claims. 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:46 (4th ed. 2002). This inquiry often focuses on the terms of the agreement that "directly lend themselves to pursuit of self-interest by class counsel and certain members of the class – namely, attorneys' fees and the distribution of any relief, particularly monetary relief, among class members." *Staton v. Beoing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). Absent the district court's failure to note "glaring inequity" in the other terms of a settlement, reversal of a court approval of a settlement is "rare . . . unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Id.* at 961.

In this case, the plaintiff-class never sought monetary damages. The amended complaint seeks class-wide injunctive and declaratory relief. (Docket #15). The relief obtained from the settlement agreement – improvements in the provision of medical care at ESP – achieves the goals of the litigation. All class members are treated the same under the terms of the settlement agreement. The agreement does not impact individual damages cases that the class members have brought or will bring, and does not forfeit the class's right to seek redress in the future, if conditions proscribed by the settlement resume. The settlement negotiations were conducted in an adversarial, arm's-length manner, by plaintiffs' counsel and defendants' counsel. (Fettig and Martin Declarations).

### f. Reaction of the Class Members to the Proposed Settlement

Approximately 1000 inmates reside at Ely State Prison, comprising the class member plaintiffs in this action. Only twelve inmate class members filed objections to the proposed settlement agreement. The number of objectors is a relevant, though not controlling, factor in the fairness analysis. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:48 (4th ed. 2002) ("Courts have taken the position that one indication of the fairness of a settlement is the lack or small number of objections."). The small number of objections is an indication that the settlement is fair, adequate, and reasonable.

The twelve inmates who filed written objections were: Michael Allen Richardson (Docket #149), Derek Constantino (Docket #150), David Owens Hooper (Docket #151), William Leonard (Docket #152), Jeremy A. Crozier (Docket #153), Kitrick Aaron Powell (Docket #154), James Ofeldt (Docket #155), Antonio Doyle (Docket #156), Frank Peck (Docket #157), Marritte Funches (Docket #158), David Ruffa (Docket #159), and Said Elmajzoub (Docket #160). The court must provide a "reasoned response" to the objections. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (citations omitted).

Inmates Richardson, Hooper, Leonard, Powell, and Funches object to the settlement due to their specific ongoing medical issues. (Docket #149, #151, #152, #154, and #158). The terms of the settlement address more systemic issues in the delivery of medical care at Ely State Prison and are not intended to address specific claims by each class member related to their specific medical care. Whereas approval of the settlement agreement will begin improvement in Ely's delivery of medical care, further litigation would only prolong the suffering of these inmates, with no guarantee of future relief.

Inmates Doyle and Elmajzoub object to the settlement based on their specific issues regarding the length of time to receive an x-ray or refills of prescriptions. (Docket #156 and #160). In the proposed settlement agreement, issues of timing for refills and appointments are addressed and will be evaluated by the Monitor during his inspections of Ely State Prison.

Inmates Ofeldt, Ruffa, and Elmajzoub object to the settlement based on claims involving

mental health care, dental care, co-pays, and disability access at Ely State Prison. (Docket #155, #159, #160). These issues (mental health care, dental care, co-pays, and disability access) were never brought in this action; because they are outside the scope of this lawsuit, these issues are not an appropriate subject of settlement.

Inmates Crozier and Powell object to the settlement due to concerns about claim preclusion and their individual lawsuits. (Docket #153 and #154). The settlement specifically does not impact any individual damage actions brought by class members, nor does it impact actions for injunctive relief arising after the dismissal of the instant action. It does, however, preclude injunctive claims filed prior to the dismissal of this action, if those claims arise from the same factual predicate raised in the instant case. Class litigation often affects some existing litigation. The class is being provided relief for the claims made in the instant action, so that individuals with claims based on an identical factual predicate will have access to relief through the settlement agreement.

Inmates Richardson, Constantino, Leonard, Peck, and Funches object to the settlement, fearing that once the monitoring period ends, defendants will no longer provide adequate medical care for inmates at Ely State Prison. (Docket #149, #150, #152, #157, and #158). The settlement agreement contains a provision that relief can be extended after the end of the two-year monitoring period, if the Monitor determines that defendants have not achieved substantial compliance with the settlement agreement. (Settlement Agreement, Docket #144-1, at p. 23). The settlement agreement will achieve the goal that the plaintiff-class sought in bringing this action.

Inmates Crozier, Peck, and Funches object to the settlement because they want a declaration from the Court that defendants violated their rights and committed wrongs. (Docket #153, #157, and #158). While the amended complaint did seek declaratory relief, class counsel has weighed the risks involved in pursuing this litigation further. An adverse decision on the merits of plaintiffs' claims would result in not only denial of declaratory relief, but would deprive plaintiffs of the relief guaranteed by the settlement agreement, to wit, improvement in ESP's delivery of medical care.

The objections of the twelve class plaintiff members have been considered carefully by this Court. The objections of the twelve inmates do not outweigh the other factors, discussed above, which weigh heavily in favor of approving the settlement agreement as fair, adequate, and

reasonable.

### C. Negotiated Attorneys' Fees and Costs

#### 1. Fees and Costs are Reasonable and Proper

In the proposed settlement agreement, both parties have agreed to a one-time lump sum payment of $325,000 to cover all of plaintiffs' attorneys' fees and costs incurred during the course of this litigation, and any fees and costs that plaintiffs' counsel will incur during the monitoring period of the settlement. (Settlement Agreement, at pp. 28-29). "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). A claim for an award of attorneys' fees must be made by motion under Rule 54(d)(2) . . . . Fed. R. Civ. P. 23(h)(1). Notice of the amount of fees must be given to class members in a reasonable manner. (*Id.*). Notice of fees and costs is generally combined with the notice of proposed settlement. *See* Fed. R. Civ. P. 23(h)(1), Advisory Committee Notes, 2003 Amendments. In the instant action, the notice of proposed settlement advised the class members that the agreement authorizes the payment of attorneys' fees and costs from defendants in the amount of $325,000. (Docket #147, Court-Approved Notice to Class, at p. 7). As discussed above, the notice was provided to all class members in a reasonable manner.

#### 2. Plaintiffs' Motion for Fees and Costs

The parties have agreed upon the lump sum payment of $325,000 in the settlement agreement and defendants voice no objection to the agreed-upon amount of fees and costs. Plaintiffs' counsel moves for the award of attorneys' fees and costs under Fed. R. Civ. P. 54(d)(2), as required by Fed. R. Civ. P. 23(h)(1). (Docket #166-1, at pp. 14-21). Local Rule 54-16 mandates that motions for attorneys' fees must include an itemization and description of work performed and costs incurred, and a declaration by the attorney responsible for billings authenticating that information and confirming that fees and costs are reasonable. Rule 54-16, at Part IA of District of Nevada's Local Rules of Court. Plaintiffs have submitted the declaration of lead attorney Amy Fettig, which authenticates the attached billing and cost statements for all attorneys that worked on plaintiffs' case. (Docket #166-3, Fettig Decl. and Billing/Cost Statements). Plaintiffs' attorney has satisfied the twelve enumerated factors in Local Rule 54-16(b)(3)(A-L), as applied to the instant

case.

### a. Results obtained and the amount involved

As discussed previously in this order, the results obtained for the class in the proposed settlement agreement substantially achieve the relief sought in this lawsuit and may exceed relief available at trial.

### b. Time and labor required

The total number of attorney work hours expended thus are 2,501.54, at an hourly rate of $208.50. (Fettig Decl.). The hourly rate of $208.50 is the rate capped under the Prison Litigation Reform Act (PLRA).[2] This rate is considerably less than the market value rate charged in both Washington, D.C. and Nevada, by lawyers of comparable skill and experience for similarly complex litigation. (Fettig Decl.). Based on this significantly lower hourly rate, the total amount of attorney fees are $386,013.69. The total costs expended are $83,734.89. Total fees and costs expended to date are $469,748.58. (Fettig Decl.). Plaintiffs' counsel have also waived further claims for fees and costs accrued during the monitoring period of the settlement agreement, estimated to be 960 hours of attorney work and a minimum of $10,000 in costs, making total estimated future attorneys' fees and costs $210,160. (Fettig Decl.). Therefore, the attorneys' fees and costs agreed to in the settlement of $325,000 represents more than a 50% reduction in fees and costs for work already performed and to be performed during the monitoring period. (Fettig Decl.). The attorneys' fees and costs are more than fair and reasonable, based on the past, present, and future work that plaintiffs' counsel has and will expend on this case.

### c. Novelty and difficulty of questions involved

The Supreme Court has recognized that, for purposes of determining fees under 42 U.S.C. §

---

[2] Under the PLRA, "[n]o award of attorneys' fees . . . shall be based upon an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel [under the Criminal Justice Act (CJA)]." 42 U.S.C. § 1997e(d)(3). The Judicial Conference has authorized a CJA rate of $139.00 per hour, effective January 1, 2010. (Memo, J. Gallant, Administrative Office of the Courts, attached as Exhibit D to Fettig Decl.). Thus, as of January 1, 2010, the PLRA rate is $208.50. *See Webb v. Ada Cnty.*, 285 F.3d 829, 839 (9th Cir. 2002), *cert. denied*, 537 U.S. 948 (2002) (hourly rate established under § 3006A is the amount authorized by the Judicial Conference, not the amount actually appropriated by Congress).

1988, civil rights cases are presumptively deemed to be as complex as antitrust cases. *Blum v. Stenson*, 465 U.S. 886, 893 (1984). Plaintiffs' counsel are familiar with the intricacies of § 1983, constitutional law, and the limitations imposed on prisoner litigants by the PLRA.

### d. Skill requisite to perform legal services

Considerable skill was needed to perform the legal services involved in certification of the class action, motion practice, discovery, developing protocol for expert tours of ESP, and months of negotiation required to formulate the settlement agreement.

### e. Preclusion of other employment

Counsel's decision to litigate this case precluded them from working on other civil rights cases. (Fettig Decl.).

### f. Customary fee

As discussed above, the attorneys' fees agreed upon in the instant case represents a 50% reduction of actual fees and costs that plaintiffs' counsel has accrued and will accrue over the course of this litigation and monitoring period of the settlement.

### g. Whether fee is fixed or contingent

Counsel's fees were purely contingent in this case. (Docket #166-1). Counsel states that the ACLU never accepts any fees from its clients other than attorneys' fees awarded or settled under 42 U.S.C. § 1988. (Docket #166-1, at p. 19). Plaintiffs' counsel has advanced all expenses incurred in this litigation, and will not receive any reimbursement and/or compensation except for the fees and costs contemplated in the settlement agreement. (Docket #166-1; Fettig Decl.).

### h. Time limitation imposed by client or circumstances

This case imposed a significant time commitment on plaintiffs' counsel after class certification, during discovery, and up until the finalization of the settlement, following six months of negotiation. (Fettig Decl.).

### i. Experience, reputation, and ability of the attorneys

Plaintiffs' attorneys are well-known, capable, and experienced litigators, as discussed earlier in this order.

### j. Undesirability of the case

A general negative stigma is associated with corrections litigation. In the instant action, plaintiffs' case would be considered undesirable by the civil rights bar. The case was fact-intensive, time-consuming, and expensive. The cost of retaining medical experts was significant. Several provisions of the Prison Litigation Reform Act (PLRA), including limits on attorney fees, make litigation difficult for plaintiffs' attorneys representing prisoners. (Fettig Decl.).

### k. Nature and length of professional relationship with clients

Counsels' professional relationship with plaintiffs dates back to 2007, when the ACLU began investigating medical conditions at ESP. (Fettig Decl.).

### l. Awards in similar cases

The attorneys' fees and costs in this case are reasonable in light of awards in similar cases. *See Graves v. Arpaio*, 633 F. Supp. 2d 834, 853 (D. Az. 2009) (awarding attorneys' fees of $1,239,491.63 and non-taxable costs of $123,221.77, in jail conditions class action case); *Lopez v. San Francisco Unified Sch. Dist.*, 385 F. Supp. 2d 981, 1004 (N.D. Cal. 2005) (awarding more than $5 million in attorneys' fees and $900,000 in costs for "hard-fought" four-year civil rights litigation that ended in settlement before trial).

The negotiated attorneys' fees and costs in the lump sum amount of $325,000, as set forth in the settlement agreement, being reasonable, fair, and proper, are approved by this Court. *See* Fed. R. Civ. P. 23(h); Fed. R. Civ. P. 54(d)(2); Local Rule 54-16.

### D. Dismissal and Entry of Judgment

Upon approval of a class action settlement, the court enters judgment of dismissal. *See* Fed. R. Civ. P. 23(e) and Fed. R. Civ. P. 23(c)(3); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:59 (4th ed. 2002). The judgment must identify the class members: "Whether or not favorable to the class, the judgment in a class action must: (A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members." Fed. R. Civ. P. 23(c)(3)(A). The instant class action was certified under Rule 23(b)(2), as it seeks only declaratory and injunctive relief. (Order Certifying Class, Docket #40, at pp. 9-10). The judgment must therefore include and describe the class members of this action, specifically: "The class is

defined as all prisoners who are now, or in the future will be, in the custody of the Nevada Department of Corrections at Ely State Prison in Ely, Nevada." (Docket #40, at p. 12). The purpose of Rule 23(c)(3)'s requirement that the judgment must include and describe the class is to prevent "one-way" intervention by defining the class of people to be affected by the judgment and providing that the judgment will be binding on the members of the class. Advisory Committee Notes, 1966 Amendments to Fed. R. Civ. P. 23(c)(3).

**III. Conclusion**

**IT IS THEREFORE ORDERED** that the proposed settlement agreement (Docket #144-1) is **APPROVED as fair, reasonable, and adequate**, pursuant to Fed. R. Civ. P. 23(e).

**IT IS FURTHER ORDERED** that the negotiated attorneys' fees and costs in the lump sum amount of $325,000 are **APPROVED**. Plaintiffs' motion for attorneys' fees and costs is **GRANTED,** pursuant to Fed. R. Civ. P. 23(h), Fed. R. Civ. P. 54(d)(2), and Local Rule 54-16.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT in this action as SETTLED. The Clerk's judgment SHALL INCLUDE the following description of the plaintiff-class members: "The class is defined as all prisoners who are now, or in the future will be, in the custody of the Nevada Department of Corrections at Ely State Prison in Ely, Nevada."**

Dated this 27th day of October, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

15